FIRST NATIONAL FIRE INSURANCE COMPANY & others *vs.* STEPHEN SALISBURY & others, trustees, & another.

Worcester.   Oct. 8, 1880. — Feb. 21, 1881.   COLT & MORTON, JJ., absent.

A railroad corporation mortgaged its property and franchise to trustees to secure the payment of certain bonds, by an instrument which provided that, until default, the corporation should remain in possession; that if the bonds were paid the conveyance should be void; and that, on default of the payment of the principal and interest on any bond, and on request of one half in amount of the holders of the bonds, the trustees should sell the property and apply the proceeds to the payment of the bonds.   *Held*, that, on default in the payment of interest, the trustees had the power to foreclose and take possession of the property, although not requested so to do by one half in amount of the bondholders.

A bill in equity, brought by less than one sixth in amount of the holders of bonds secured by a mortgage given by a railroad corporation, against the trustees under said mortgage, to compel them to take possession of the property mortgaged, alleged that there had been a default in the payment of interest on the bonds; that the corporation had signified a purpose not to pay interest on the bonds unless the holders thereof would take a less rate of interest than the bonds called for; that the net income of the corporation was sufficient to enable it to pay interest; that the corporation was applying the income to unsecured debts; and that there was danger that, if this course continued, the property would be inadequate security for the payment of the mortgage.   *Held*, on demurrer, that the bill could be maintained.

It is no defence to a bill in equity to compel trustees, under a mortgage given by a railroad corporation, to take possession, on default of the corporation to pay

the debt secured by the mortgage, that litigation may be necessary to ascertain what property is covered by the mortgage; or that a great burden and personal liability for injuries done and debts subsequently incurred will thereby be imposed upon them.

If a railroad corporation executes a mortgage to trustees to secure the payment of certain bonds, and afterwards executes a second mortgage to the same trustees to secure other bonds, the bondholders under the second mortgage are not necessary parties to a bill in equity by the bondholders under the first mortgage to compel the trustees to take possession of the mortgaged prop erty.

If a bill in equity is brought by one sixth of the holders of bonds, issued by a railroad corporation and secured by a mortgage, against the trustees named in the mortgage, the other holders of bonds secured by the same mortgage will be allowed to come in as plaintiffs.

BILL IN EQUITY, filed February 16, 1880, by sixteen holders of certain bonds issued by the Boston, Barre and Gardner Railroad Corporation, in behalf of themselves and others who should come in to prosecute the bill, against the trustees under a mortgage executed by said corporation to secure said bonds, and against said corporation.

The bill alleged that on June 21, 1873, the Boston, Barre and Gardner Railroad Corporation, in pursuance of the authority conferred upon it by the St. of 1873, c. 348, conveyed in mortgage to Stephen Salisbury, Calvin Foster and Lewis Barnard, as trustees, "the railroad of said corporation, with all the appendages and appurtenances, meaning and intending to include the line of said railroad as the same now is or hereafter shall be located, from its southerly terminus in Worcester to its northerly terminus in Winchendon, constructed, in process of construction, and to be constructed, with buildings, road-bed, embankments, bridges, sidings, turnouts, turntables, ties, rails and other parts and appendages, also all the land owned by said corporation, whether within or without its location, also its franchise."

The mortgage, a copy of which was annexed to the bill, after reciting the votes of the stockholders and directors authorizing the issue of bonds to the amount of $400,000, payable in twenty years, proceeded as follows: "Now therefore the condition of this instrument is that if the said Boston, Barre and Gardner Railroad Corporation shall well and truly pay or cause to be paid each and every such bond, and the interest accruing thereon according to the tenor and effect thereof, then this instrument shall

be void, but otherwise shall remain in full force.   And in default of the payment of the principal or interest of any of said bonds as aforesaid, and in case the same shall remain due and unpaid for the space of six months, and in case also the trustees aforesaid shall be in writing requested thereto by one half in amount of the holders of said bonds, and not otherwise, the said trustees are hereby authorized, empowered and required to sell the mortgaged premises aforesaid, at public auction, to the highest bidder, giving three months' notice of said sale in one or more newspapers published in the several cities of New York, Providence, Boston and Worcester, and to execute and deliver proper deed or deeds conveying the same to the purchaser or purchasers thereof, being the highest bidder or bidders therefor, and to apply the net proceeds of said sale after retaining therefrom the expenses of said sale and a suitable compensation for their own services, to the payment of all of said bonds remaining unpaid, whether due or not due, if said proceeds are sufficient therefor, and, if not sufficient, to divide the same ratably among the several holders of said bonds according to the amount thereof and the balance thereof, if any, to pay over to said corporation.   Provided, however, that if said corporation shall, at any time before such sale, pay or tender or cause to be paid or tendered to said trustees or either of them, for the use and benefit of said bondholders, the full amount of principal and interest then due upon said bonds with the expenses incurred by said trustees, including a reasonable compensation for their own services, an account of which expenses and services they shall render to said corporation upon request within a reasonable time, such sale shall not be made, but whenever a new default to pay the principal or interest upon said bonds shall occur, and continue as aforesaid, and a new request shall be made by one half in amount of the bondholders as aforesaid, the same proceedings shall be had in all respects in regard to the sale of said mortgaged premises, and the application of the proceeds thereof as hereinbefore provided, and with the same right of payment of principal and interest due to the corporation. And it is further provided that the said Boston, Barre and Gardner Railroad Corporation shall remain in possession of said mortgaged premises whenever not in default of the conditions hereof, and for six months after any default.   And the said Stephen

Salisbury, Calvin Foster and Lewis Barnard, parties of the second part, covenant and agree to and with the Boston, Barre and Gardner Railroad Corporation, party of the first part, that they will truly execute and perform the trusts hereby reposed in them, to the best of their judgment and discretion, provided always that neither of said trustees, their executors or administrators, shall be liable or accountable for the acts, doings or default of the others, or either of them, nor for any loss or damage unless the same shall arise through his own negligence or default."

The bill further alleged that the whole amount of the bonds secured by the mortgage were duly issued and sold, and the same are now outstanding unpaid; and that the plaintiffs were the owners of such bonds to the amount of $64,000, at their par value.

That on July 16, 1875, the railroad corporation executed to the same trustees a second mortgage of its railroad and franchise, enumerating therein all its real and personal property, subject to the first mortgage, to secure bonds to the amount of $300,000.

That the corporation has made default in the payment of the interest due April 1, 1879, on the bonds owned by the plaintiffs and on other bonds of the same issue, and such default had continued more than six months; that, after the breach of condition had continued for six months, the plaintiffs notified the trustees and requested them to take possession of the mortgaged premises, for the purpose of receiving the rents and profits and applying them to the purposes of the trust; but the trustees refused, and pretended that they were of opinion that it was not for the interest of the plaintiffs and other holders of bonds to take possession.

That the corporation was, by means of the property mortgaged, earning and receiving large amounts of money over and above its running expenses, and had been, for a long time before and since said default in the payment of said interest as aforesaid, in receipt of large earnings over and above its expenses, sufficient, if faithfully applied, to pay the whole of the interest on the bonds secured by the first mortgage according to the terms and effect of said bonds; that the corporation

had applied said earnings to the payment of unsecured lia-
bilities, and to expenditures in no way in the interest of the
plaintiffs, or other holders of said bonds secured by the first
mortgage.

That by the terms and effect of the first mortgage the legal
title to the entire line of railroad owned by the corporation, with
all appurtenances and appendages and all the land of said corpo-
ration within or without its location, together with all its loco-
motive engines, cars and implements fitted, designed, adapted
and procured, whether before or after said mortgage, for use in
connection with and upon said railroad, passed by said mortgage,
as incident to the franchise, or part of the realty, or otherwise,
to the said trustees, and was vested in them in.trust for the pur-
poses expressed in said mortgage.

That upon the breach of the condition of the mortgage, con-
tinued for six months as aforesaid, the trustees became at once
entitled to the possession of all and singular the premises con-
veyed by the mortgage, and it became and was their duty forth-
with to take possession thereof for the purpose of securing the
application of all rents and profits, above necessary running ex-
penses and repairs, to the payment of said bonds according to
their tenor and effect.

That if the trustees should take possession of the property
conveyed by the first mortgage, and manage the same with ordi-
nary prudence and skill, the net income and profits readily to be
derived therefrom would more than pay the entire interest ac-
crued and to accrue on all the bonds secured by the first mort-
gage.

That certain judgment creditors of the corporation had seized
on execution certain cars, locomotives and other property which
were covered and conveyed by the first mortgage; and, upon sale
thereof under said execution or executions, certain persons had
pretended to buy said property and in some way and on some
terms, not known to the plaintiffs, had let the property to the
corporation who was now using the same; that said proceed-
ings, so far as they covered and affected any of the locomo-
tives, cars and rolling stock of the corporation, were wholly
void and of no effect as against the mortgagees in the first
mortgage.

That there was danger, if the interest on the bonds was allowed to increase and the corporation allowed to apply the whole of the income of the mortgaged property to other purposes, that the property would not be sufficient to pay the interest on the mortgage bonds and to pay the principal at maturity; that the omission and refusal of the trustees to take possession of the mortgaged property and apply the income and profits thereof to the purposes provided in said mortgage, and to foreclose said mortgage, was a violation of the duty imposed by the trust.

That said trustees were interested, either personally or as officers of certain institutions, in the bonds secured by the second mortgage, and that the judgment of the trustees was affected adversely to the plaintiffs' rights by said interest.

That the corporation, besides refusing and neglecting to pay the interest falling due April 1, 1879, had wholly refused and neglected to pay any part of the interest on said bonds falling due October 1, 1879, and threatened and avowed that it would pay no part of the interest due or to become due on said bonds and other bonds of the same issue, held by other persons, unless the holders thereof would accept interest at a lower rate than provided by the terms of said bonds, and would release all claim for any interest on said bonds above said reduced rate, whether already accrued or to accrue in the future, and would also release and waive all claim on a part of the property conveyed by the first mortgage.

The prayer of the bill was that the trustees be ordered to take possession, and the corporation be ordered to deliver to them possession, of all the property conveyed by the first mortgage, and also of all the property conveyed by the second mortgage, for the purpose of receiving and applying the net income and profits thereof to the payment of the interest of the bonds of the plaintiffs and others of the same issue and date, and also for the purpose of foreclosing the mortgage in case the bonds should not be paid according to the tenor and effect thereof, and that in case said trustees refused or neglected to act in the premises a receiver might be appointed to take possession of said property for the purpose of applying the net income and profits to the payment of said bonds according to the tenor and effect thereof; and for further relief.

The defendants demurred to the bill for want of equity, and because the holders of the bonds secured by the second mortgage had not been made parties to the bill.

The case was heard on the bill and demurrer by *Ames*, J., and reserved for the consideration of the full court.

After the entry of the case on the law docket for argument, Francis T. Blackmer and fifty-one others filed a petition in the case, averring that at the times the defaults occurred in the payment of interest, as alleged in the bill, they were holders of bonds secured by the first mortgage to the amount of $228,100; that the bill had not been authorized by them; and that it was not for their interest, or of any of the holders of the bonds, that the prayer of the bill should be granted; and prayed that they might have leave to intervene in the cause, and become parties plaintiff therein in relation to the further direction and disposition thereof.

An agreed statement of facts was filed, by which it appeared that the petitioners were owners of bonds secured by the first mortgage to the amount stated in the petition; that the plaintiffs did not claim that they had any authority to appear for the petitioners; and that Stephen Salisbury, one of the petitioners, was also one of the defendant trustees.

*G. F. Hoar & W. W. Rice*, for the defendants.

*F. T. Blackmer*, for the petitioners.

*F. P. Goulding*, for the plaintiffs.

SOULE, J. The instrument under which the defendants hold a conditional title to the railroad with its appurtenances of the Boston, Barre and Gardner Railroad Corporation, is a mortgage which provides that the mortgagor shall retain possession of the mortgaged property till, and for six months after, default in the payment of any of the bonds secured by it, or interest thereon, and that thereafter the defendants, at the written request of one half in amount of the holders of the bonds, are authorized and required to proceed to sell the mortgaged property, and apply the net proceeds of the sale to payment of the bonds in full, or ratably if the proceeds are insufficient for payment in full.

These provisions do not abridge the rights of the defendants as mortgagees, except in those particulars in which they are inconsistent with those rights. In the absence of any stipulation

that a mortgagor may retain possession of the mortgaged prop-
erty, a mortgagee has the right to take possession at any time;
and so far as the mortgage to the defendants provides otherwise,
it abridges their rights as mortgagees. But the provision as to
a sale of the property is in addition to the rights ordinarily in a
mortgagee, and not inconsistent therewith, so that the rights of
the defendants under this mortgage with reference to possession
and management of the property, and for foreclosure of the mort-
gage after default in payment of interest has continued for six
months, are precisely what they would have been if the provisions
referred to had not been contained in the instrument, with the
additional right and duty, on the request in writing of half in
amount of the bondholders, to sell the property and distribute
the proceeds. *Shaw* v. *Norfolk County Railroad*, 5 Gray, 162.
*Haven* v. *Adams*, 4 Allen, 80. *Haven* v. *Grand Junction Rail-
road*, 12 Allen, 337.

As the defendants hold the mortgage not to secure a debt due
to themselves, but as trustees for the holders of the bonds of the
mortgagor, their duties are regulated by the general rules of law
which affect all trustees, and whenever they fail to perform them,
either through wilfulness, indifference or error of judgment, the
bondholders who are aggrieved by their conduct may obtain re-
lief in this court sitting as a court of equity. This is clear
under the general provisions of the statutes giving this court
jurisdiction on equity; Gen. Sts. *c.* 113, § 2; and under the special
provisions relating to jurisdiction in equity of all cases arising
out of railroad mortgages. Gen. Sts. *c.* 63, § 128. Among the
duties of the defendants as trustees, are these: They must act
in good faith for the best interests of the bondholders; they must
take care that the property is not wasted nor depreciated; they
must see that its income is not improperly diverted from the
payment of interest on the mortgage debt as it accrues; and in
case of a manifest purpose on the part of the mortgagor to waste
or destroy the property, or not to apply the income to payment
of interest, to the injury of the bondholders, it is their duty to
enter and take possession of the property, and manage it for the
security of the *cestuis que trust.* Perry on Trusts, § 749.

Applying these principles to the case before us, it is clear that
the bill states a case which calls for the interference of a court

of equity. The plaintiffs are holders of bonds secured by the mortgage. They have no means of enforcing their rights in the mortgaged property, except through the action of the defendants. They allege that the mortgagor has been in default in the matter of the payment of interest for more than six months, and that it has signified a purpose not to pay interest on their bonds, unless they will accept payment at a less rate than the bonds call for; that the property with the rolling stock of the mortgagor produces an income sufficient, after paying the running expenses, to pay the overdue interest on the bonds, and to pay the accruing interest; that the mortgagor applies the earnings to pay its unsecured debts, and to uses which do not benefit the plaintiffs, and that there is danger that, if this course continues, the mortgage debt will grow by the accumulation of interest to such amount that the mortgage will be inadequate security for its payment. The demurrer admits the truth of these allegations, and, of course, does not set up a state of facts by way of explanation which justifies the inaction of the defendants. On these facts it is the right of the plaintiffs that the defendants take possession of the property for the purpose of foreclosure, and manage it, and apply the net earnings to payment of the interest on the bonds.

There is no force in the objection that this may render it necessary for the parties in interest to go into litigation to ascertain what property the first mortgage covers, and what it does not cover, in order to settle the rights of the bondholders under the second mortgage, as distinguished from the bondholders under the first mortgage. The rights of the plaintiffs are the same that they would be if the second mortgage had not been made, and there is no reason why they should not enjoy those rights in the fact that the mortgagor has done something, since their rights attached to the property, which will render litigation necessary to define, limit and enforce them. Nor are the rights of the plaintiffs to be affected by the fact that, if the bill is sustained, and the defendants are required to take possession of the mortgaged road and manage it, a great burden of labor and a great responsibility moral and financial will be imposed on the defendants, in that they will be personally liable for all injuries done and debts incurred to others in managing the property. This burden

and responsibility are incident to the trust which they assumed in taking the mortgage, and it is not for them to say that the *cestuis que trust* must suffer, because it is inconvenient, disagreeable or burdensome for them to do their duty as trustees. Perry on Trusts, § 763.

The bondholders under the second mortgage are not necessary parties to the bill. It would be probably impossible to ascertain the names and residences of them all, and their interests are fully represented by the trustees to whom the second mortgage runs, the defendants already in the case. These trustees have no interest adverse to those bondholders, and there can be no other representative of them so fit as the trustees who hold the mortgage security in trust for them all. *Shaw* v. *Norfolk County Railroad*, above cited.

As the bill states a case which calls for and entitles the plaintiffs to relief in equity, and as all necessary persons are made parties to it, the demurrer is not well taken.

The defendants are trustees for all the bondholders, and the bill is brought by about one sixth of them in amount. It looks to a foreclosure of the mortgage and a closing up of the trust. All the parties interested are entitled to be heard if they desire it, and are proper, if not necessary, parties to the proceedings. The petition of the majority of the bondholders, who were not originally made parties, that they be permitted to come in and be joined as plaintiffs, is the only means which they could adopt to make themselves parties, and to put them into the proper position for insisting on and maintaining their rights. It must therefore be granted. As to the consequences of their becoming parties, we are not called on now to decide.

*Demurrer overruled, and petition of bondholders granted.*