## Dow and others v. MEMPHIS & L. R. R. Co., (as reorganized.)

*(Circuit Court, E. D. Arkansas. April Term, 1884.)*

1. RAILROAD MORTGAGE—FORECLOSURE—RECEIVER.
   Where a railroad company makes default in the payment of the interest on its mortgage indebtedness, and the mortgaged property, consisting of its road and other property, is inadequate security for the mortgage debt, and the company is insolvent and appropriating its earnings to its own use, a receiver will be appointed, during the pendency of a bill filed by the mortgagees, to be put in possession of the mortgaged property.

2. SAME—LEX REI SITÆ.
   When not varied by contract, the law of the state where a mortgage is executed and the mortgaged property situated, furnishes the rule for determining the rights of the mortgagees after condition broken.

3. SAME—COMMON-LAW RULE—CONDITION BROKEN.
   In Arkansas, the common-law rule on the subject of the rights of a mortgagee, after condition broken, prevails; and if the debtor fails to pay the mortgage debt at the law day, the mortgagee is entitled to the possession of the mortgaged property, and may maintain ejectment therefor.

4. SAME—SUBJECT-MATTER OF MORTGAGE—BILL IN EQUITY.
   Where a railroad mortgage embraces the road, rolling stock, and other personal property of the company, the proper remedy of the mortgagee to obtain possession of the mortgaged property, after condition broken, is by bill in equity for specific enforcement of the mortgagee's rights.

5. SAME—STIPULATION AS TO SALE—REMEDY GIVEN BY LAW.
   A stipulation in a railroad mortgage, that, in case of default in the payment of interest for 60 days, it should be obligatory on the trustees named in the mortgage, upon the written request of one-third in interest of the holders of

the bonds, to take possession, operate, and *sell* the road and other mortgaged property, as a remedy, is cumulative, and not exclusive of the remedies given by law.

6. SAME—DUTIES AND LIABILITIES OF RECEIVER.

The terms proper to be imposed, as a condition upon which a receiver of a railroad will be appointed at the suit of the trustees for the first mortgage bondholders, discussed, and *held:*

(1) That where the default in the payment of the mortgage debt occurred more than a year before the filing of the bill, the receiver should be required to pay all the debts and liabilities of the railroad company incurred in operating, repairing, and improving the road for the period of six months next before the filing of the bill.

(2) That a general license should be given to sue the receiver, in any court of competent jurisdiction, for liabilities incurred by him in operating the road.

(3) That the debts which the receiver is required to pay, and all debts and liabilities incurred by him in operating the road, should be made a first lien on the mortgaged property, which should not be released until such liabilities are discharged.

(4) That the plaintiffs should be required to prosecute their suit to a final decree with diligence, and, failing so to do, the receiver should be discharged by the court of its own motion.

In Equity.

*U. M. & G. B. Rose,* for plaintiffs.

*J. C. Brown, B. C. Brown,* and *Dillon & Swayne,* for defendant.

CALDWELL, J. On the first day of May, 1877, the defendant executed its mortgage deed of that date, by which it conveyed to the trustees therein named its railroad and other property, real, personal, and mixed, including its income and earnings, books of account, records, choses in action, and muniments of title. This mortgage was conditioned to secure the payment of 250 bonds, of $1,000 each, of even date with the mortgage, with interest at the rate of 10 per cent. per annum, payable semi-annually. Fifty of said bonds matured on the first day of May, 1879, and a like number annually thereafter, until all were due. On the second day of May, 1877, the defendant executed a second mortgage to the same trustees on the same property, and on "the right or franchise to be a corporation," which it was authorized to mortgage by a provision in its charter to secure bonds to the amount of $2,600,000, due and payable on the first day of July, 1907, and drawing interest at the rate of 4 per cent. per annum until the first day of July, 1882, and after that date at the rate of 8 per cent. per annum, payable semi-annually. The bill in this case is filed by the present trustees in the mortgages, and its prayer is that the mortgaged property may be decreed to be placed in their hands as such trustees, and that in the mean time a receiver may be appointed with the usual powers.

The case is now before the court on the motion for the appointment of a receiver. For interlocutory purposes the following allegations of the bill may be regarded as established: That the state of Arkansas held a mortgage lien on the railroad and property of the defendant, created when the property belonged to another corporation, of which the defendant is the successor, which was prior in point of time and paramount to the lien created by the mortgages set out in the plain-

tiff's bill; that a decree foreclosing the state mortgage was rendered by the supreme court of the state on the fourth day of March, 1882; that the defendant declined to pay the sum decreed to be due the state, and the property was about to be sold to satisfy said decree, when the plaintiffs, acting as trustees under the mortgage of May 2, 1877, were compelled to pay off said decree, amounting to $239,672.71, in order to protect the rights of the holders of the bonds secured by that mortgage, and that the plaintiffs, as trustees, aforesaid, upon bill filed for that purpose, were by decree of this court subrogated to the rights of the state of Arkansas under the decree of the supreme court of the state; that the defendant paid the interest on the bonds secured by the mortgage of May 2, 1877, up to the first day of January, 1882, and has refused to pay the interest which has accrued since that time, and has refused to pay either principal or interest of the bonds secured by the mortgage of the first of May, 1877.

Since the bill in this case was filed, a decree has been rendered foreclosing the last-mentioned mortgage, under which the property will be sold at an early day, unless the decree is superseded or paid.

On the twenty-fourth day of June, 1877, and in anticipation of making a default in the payment of the interest coupons falling due July 1, 1882, the defendant confessed a judgment in this court in favor of Russell Sage, who is interested in the stock of the company for the sum of $125,921.13, and immediately thereafter, acting in collusion with said Sage, procured the appointment in the state court of its general manager as a receiver of its road, with a view of hindering and delaying the payment of the interest accruing on its bonds. The cause in which the receiver was appointed was afterwards removed to this court, which, on its own motion, discharged the receiver, upon the ground that the suit was collusive, and to hinder and delay creditors, as shown by the record. *Sage* v. *Memphis & L. R. R. Co.* 18 Fed. Rep. 571.

A large number of the holders of overdue interest coupons have obtained judgments at law upon them, and have filed their bills praying that the liens of these judgments may be foreclosed, and that the property of the defendant may be sold for their payment. These judgments are not appealable, and the defendant offers no reason why it does not pay them.

In the suit in this court brought by the trustees to be subrogated to the rights of the state, whose decree they paid off, the defendant set up as a defense, in its answer and by cross-bill, that the bonds of May 2, 1877, and the mortgage securing the same, were without consideration, and void for want of corporate power in the defendant to issue the same. Exceptions to the answer and a demurrer to the cross-bill were sustained, the court holding the alleged defenses were without equity, and groundless.

The defendant filed a bill against the present plaintiffs, as trustees in the mortgage of the second day of May, 1877, in the circuit court

of the United States for the Southern district of New York, in which it sought to annul the bonds and mortgage of the second day of May, 1877, upon the same ground set up in the cross-bill in this court. Upon final hearing, that court dismissed the bill for want of equity, declaring the case to be "phenomenal in the audacity of the attempt to induce a court of equity to assist a corporation in repudiating its obligations to its creditors without offering to return the property it acquired by its unauthorized contract with them." *Memphis & L. R. R. Co.* v. *Dow,* 19 FED. REP. 388.

The defendant has admitted in its pleadings, filed in cases in this court to which it was a party, that "should it be decided that said bonds [of the second day of May, 1877] are valid, and that respondent is liable therefor, it admits its debts, obligations, and liabilities largely exceed the value of its property of every character." It has been decided that the defendant is liable on these bonds. That question is *res judicata* in this court, and for the purposes of this hearing the above admission must be treated as an unqualified confession by the defendant of its insolvency, and inability to pay its debts.

In its answer filed in this case the defendant says: "Respondent itself believes that its property is not worth the amount of overdue and unpaid interest upon said coupons, the principal of the $2,600,000 of May 2, 1877, and the decree for money paid to the state of Arkansas. And it says that this load of indebtedness has been loaded upon it by the complainants themselves, and that if the defendant is in any default, such default has been caused by their action."

The defendant, upon its own confession, is insolvent, and unable to pay its debts; and it is apparent, from the records of the court and exhibits to the bill, that it is indisposed to do so to the extent that it might. The interest coupons of its mortgage bonds are long overdue, and a large amount of them in judgment. No payment of interest on its mortgage debt has been made since January 1, 1882, and it gives forth no intimation of its purpose ever to pay the same, or any part of it. It was the plain duty of the defendant to pay off the decree in favor of the state for the protection of its mortgage bondholders whose liens were junior to that of the state. It is not to be denied that it had the credit and ability to do so. The refusal to pay off this decree was for the very purpose of extinguishing the rights and lien of its own bondholders. And this would have been the result had not the trustees, on behalf of the bondholders, advanced the funds to pay the state decree. The income and earnings, as well as all its property, are mortgaged to secure the payment of the principal and interest of its bonds. Upon these facts it is futile for the defendant to contend that a court of equity ought to decree that it is still entitled to receive and appropriate to its own use the income and earnings of its road.

The law of this state furnishes the rule for determining the rights of the mortgagees under the mortgage, unless that rule has been changed

by the contract of the parties. In this state the common-law rule on the subject of the rights of a mortgagee, after condition broken, prevails, and if the debtor fails to pay the mortgage debt at the law day, the mortgagee is entitled to the possession of the mortgaged property, and may maintain ejectment therefor, (*Fitzgerald* v. *Beebe*, 7 Ark. 310; *Gilchrist* v. *Patterson*, 18 Ark. 575,) and, upon the facts of this case, to a receiver. *Price* v. *Dowdy*, 34 Ark. 285. This law is as much a part of the mortgage as if literally incorporated in it. In this case the remedy at law is not adequate. The mortgage embraces real, personal, and mixed property, and the appropriate remedy is in equity, when the contract rights of the mortgagee can be specifically enforced. *Shepley* v. *Atlantic R. Co.* 55 Me. 395; *Hall* v. *Sullivan R. Co.* 2 Redf. R. R. Cas. 621; *First Nat. Ins. Co.* v. *Salisbury*, 130 Mass. 303; and see *Warren* v. *Rising Fawn Iron Co.* 3 Woods, 514; *North Carolina R. Co.* v. *Drew*, Id. 713; *State* v. *Northern Cent. R. Co.* 18 Md. 193.

Ejectment will not lie for personal property, records, and choses in action. The railroad is an entity, composed of real estate and personal property. For railroad purposes its real estate would be valueless without the rolling stock and other personal property; and, on the other hand, the rolling stock and personal property would be of no utility for railroad purposes without the road-bed, track, and stations. The forms and processes of a court of law are not flexible enough to transfer the possession of the mortgaged property as a whole, and the mortgage does not contemplate its separation. It is not contended that an action at law for damages for non-delivery of the property against a mortgagee confessing itself insolvent would be an adequate remedy. But it is said what would otherwise be the legal rights of the parties in respect to the right of possession, on default of payment of interest, have been varied by the terms of the mortgage. The clauses of the mortgage bearing on this question are the first and the fifth, which read as follows:

"*First.* That as long as the said party of the first part shall not make a default in the payment of either principal or interest on any of the aforesaid bonds and coupons, as the same may respectively become due and payable, and shall faithfully perform the conditions of said bonds, and the stipulations and considerations of this indenture, said party of the first part shall be entitled to retain the possession of the railroad and other property hereby conveyed, and receive and enjoy the income thereof."

"*Fifth.* In case default for the space of sixty days shall be made in the payment of any of said interest coupons, or of the principal sum of any of said bonds, as they shall respectively fall due, the said party of the second part, their successor or successors, on the written request of one-third in interest of the holders of said bonds, may and shall enter in and upon, and take possession and operate, all and singular the said railroad and all other property, real, personal, or mixed, hereinbefore conveyed, or intended to be conveyed, and take and receive the income and profits thereof, and may and shall sell all and singular said railroad and lands, and all other property, real, personal, or mixed, with all the charters, rights, privileges, immunities, franchises, and choses in action of said railroad company."

It is further provided that the sale may be made in the city of Little Rock, or any town on the line of the railroad, and "with or without entry on said conveyed premises," and upon four weeks' notice published in newspapers.

In the first of these clauses the negative is implied, viz., that the railroad company shall not be entitled to retain possession after making default in the payment of either principal or interest of the bonds. This, probably, adds nothing to the rights of the mortgagees under the law. But it does show that the parties had no intention of varying the known legal rights of the mortgagee under the law. It is under that clause, and the conceded legal rights of a mortgagee under the laws of the state, that the plaintiffs seek the aid of the court to put them in possession of the mortgaged property.

The defendant's contention is that the fifth clause furnishes the rule by which the trustees are to obtain possession, and that it is exclusive of all other modes; and that as the bill does not allege that one-third in value of the bondholders have requested the trustees to take possession, it states no case. This clause contains a power of sale. Under it the trustees may sell the property upon four weeks' notice; and upon the written request of one-third in interest of the holders of the bonds, it is made the imperative duty of the trustees to take possession for the purpose of selling. The power of sale is the principal subject dealt with in this clause, and the possession there spoken of is an incident to the power of sale, and for the purpose of rendering that power effectual. When one-third in value of the bondholders come to a resolution to foreclose the mortgage by sale, they can make it the duty of the trustees to take possession of the property for that purpose, and receive the income and earnings of the road from the time the possession is taken until the sale. A most important consideration at the sale would be the power of the trustees to deliver the property to the purchaser; doubt on this point would have a depressing effect on bidders. If the trustees are in the actual possession of the property, all doubt is removed. The practical effect of a sale of the mortgaged property would be to extinguish the mortgage debt, whether the property sold for the amount of the debt or not, because the railroad company would be left without either property or a charter, and the obligations of a corporation in that plight would be of little worth. The trustees are not, therefore, to take possession of the property for the purpose of selling it, and thereby extinguishing the mortgage debt before its maturity, unless one-third of the bondholders request it. Although the provision is penal in its character, it operates alike for the protection of the bondholders and the company, (*Chicago, D. & V. R. Co.* v. *Fosdick*, 106 U. S. 47, S. C. 1 Sup. Ct. Rep. 10,) so far as relates to a sale of the property by the trustees, and possession taken for that purpose. But as a remedy it is cumulative, and not exclusive of the rights and remedies given by the law to mortgagees, in case of default in payment of the mortgage

debt according to the terms of the mortgage. *First Nat. Ins. Co.* v. *Salisbury, supra.*

The defendant's mortgage bonds draw 8 per cent. interest, payable semi-annually, and run until 1907. The value of such a bond, when the security is good and the interest paid, is appreciated by the holders, who insist they are entitled to the benefit of their contract, and decline to reduce the rate of interest. The bondholders allege that if the road is judiciously managed, its income and earnings will be sufficient to pay the running expenses, make all necessary repairs and betterments, and pay the interest on the mortgage debt, as well that due as that which is to accrue, and they ask to be put in possession of the mortgaged property for that purpose. However burdensome this high rate of interest may be to the defendant, it has no legal right to demand a reduction, nor can it compel a foreclosure and payment of the mortgage debt, before its maturity, by refusing to pay the interest according to the obligation of its contract, and appropriating its income and earnings to its own use. It cannot thus take advantage of its own wrong. Jones, R. R. Secur. § 91; *Nebraska City Bank* v. *Nebraska City Gas-light Co.* 4 McCrary, 319; S. C. 14 FED. REP. 763. The value of the bonds in the market was enhanced by the long time they had to run, and the high rate of interest they bore. The defendant has enjoyed the benefit of these provisions in the enhanced value they imparted to its bonds. They are a part of the obligation of its contract, and the law would be singularly defective if the defendant could, by its own act, evade them.

The views of this court on the subject of appointing receivers of railroads are well known. It will not appoint a receiver except where the right and the necessity to do so are clear. *Overton* v. *Memphis & L. R. R. Co.* 10 FED. REP. 866; *Texas & St. L. Ry. Co.* v. *Rust,* 17 FED. REP. 282; *Sage* v. *Memphis & L. R. R. Co.* 18 FED. REP. 571; *Credit Co.* v. *Arkansas Cent. R. Co.* 15 FED. REP. 49. On the facts of this case, the duty of the court to appoint a receiver until the final hearing of the bill would seem to be as nearly imperative as the exercise of that jurisdiction can be said to be in any case. The order appointing the receiver will confer on him the usual powers, and will contain the following special provisions to which the plaintiffs must assent as a condition of appointing a receiver:

(1) That the debts, if any, due from the railroad company for ticket and freight balances; and for work and labor performed by its employes and laborers; and for supplies and materials furnished for equipping, operating, repairing, or improving the road; and all obligations incurred in the transportation of passengers and freight, or for injuries to person or property, which have accrued within six months last past,—shall be paid by the receiver out of the earnings of the road.

(2) That persons having demands or claims of any character against the receiver, may, without applying to this court for leave to do so, bring suit thereon against the receiver in any court in this state having jurisdiction, or may file their petition and have their claim adjudicated in this court at their election. This clause shall not be construed as authorizing the levy of any

writ or process on the property in the hands of the receiver, or taking the same from his custody or possession.

(3) That the debts and liabilities of the railroad company which the receiver is ordered to pay, together with all debts and liabilities which said receiver may incur in operating said road, including claims for injuries to person and property, shall constitute a lien on said road paramount and superior to the lien of the mortgages set out in the plaintiff's bill, and said lien shall continue until said debts and liabilities are satisfied; and the discharge of said property from the custody of the receiver shall not affect said lien, or deprive claimants of the opportunity of proving their demands, but said receiver or a successor shall be continued in office for the adjustment of such demands, and may be sued therefor; and if said demands are not paid by the person or corporation in possession of said mortgaged property, the court may repossess itself of the same, and operate said road by a receiver until said debts are paid, or may decree a sale of the property, as shall seem most expedient.

(4) That said plaintiff shall prosecute this suit to final decree as speedily as the same can be done under the rules of equity practice, and, failing so to do, the court of its own motion will discharge said property from the custody of the receiver.

1. The first clause is proper, because it has been open to the plaintiffs, to apply for and obtain the relief they now seek, for more than a year, and by permitting the company to run and operate the road, they must, as between them and the persons furnishing labor, supplies, and materials for the use of the road, and those damaged by its operation, be held to have impliedly assented that the earnings of the road should be applied to pay such expenses and liabilities, which, in a greater or less degree, were incurred for the plaintiff's benefit. There is ample authority for making this order. *Fosdick* v. *Schall*, 99 U. S. 251; *Miltenberger* v. *Logansport Ry. Co.* 106 U. S. 286; S. C. 1 Sup. Ct. Rep. 140; *Union Trust Co.* v. *Souther*, 107 U. S. 591; S. C. 2 Sup. Ct. Rep. 295. It is no answer to say the company used its earnings for other purposes. The bondholders knew such liabilities must be incurred in running the road. They had it in their power to take possession of the road and secure its earnings to pay such liabilities. The class of persons protected by this order could not do anything to protect themselves, or compel a different application of the earnings. The misapplication of the earnings, if there was any, is not, therefore, to prejudice the class of creditors named. The right to require the payment of such debts does not depend on whether current earnings have been used to pay the mortgage debt. *Union Trust Co.* v. *Souther, supra.*

2. The general license to sue the receiver is given because it is desirable that the right of the citizen to sue in the local state courts, on the line of the road, should be interfered with as little as possible. It is doubtless convenient, and a saving and protection to the railroad company and its mortgage bondholders, to have the litigation growing out of the operation of a long line of railroad concentrated in a single court, and on the equity side of that court, where justice is administered without the intervention of a jury. But, in proportion as the railroad and its bondholders profit by such an arrangement, the cit-

izen dealing with the receiver is subjected to inconvenience and expense, and he is deprived of the forum, and the right of trial by jury, to which, in every other case of legal cognizance, he has the right to appeal for redress. It is not necessary, for the accomplishment of the purposes for which receivers of railroads are appointed, to impose such burdens and deprivations on citizens dealing with the receiver; and neither the railroad company nor its bondholders have any equity to ask it. Where property is in the hands of a receiver simply as a custodian, or for sale or distribution, it is proper that all persons having claims against it, or upon the fund arising from its sale, should be required to assert them in the court appointing the receiver. But a very different question is presented where the court assumes the operation of a railroad hundreds of miles in length, and advertises itself to the world as a common carrier. This brings it into constant and extensive business relations with the public. Out of the thousands of contracts it enters into daily as a common carrier, some are broken, and property is damaged and destroyed, and passengers injured and killed by the negligent and tortious acts of its receiver and his agents. In a word, all the liabilities incident to the operation of a railroad are incurred by a court where it engages in that business; and, when they are incurred, why should the citizen be denied the right to establish the justice and amount of his demand, by the verdict of a jury in a court of the county where the cause of action arose and the witnesses reside? If the road was operated by its owners or its creditors, the citizen would have this right; and when it is operated for their benefit by a receiver, why should the right be denied?

It is said that if suits are allowed to be brought in the courts of common law the plaintiffs would probably receive more by the verdict of a jury than would be awarded to them by the master or chancellor, and that to compel the receiver to answer to suits along the entire line of the road, subjects him to inconvenience and entails additional expense on the estate. This is probably true. But why should a court of equity deprive the citizen of his constitutional right of trial by jury, and subject him to inconvenience and loss, to make money for a railroad corporation and its bondholders? If the denial of the right to sue can be rested on the ground that it saves money for the corporation and its creditors, why not carry the doctrine one degree further, and declare the receiver shall not be liable to the citizen at all for breaches of contract, or any act of malfeasance or misfeasance in his office as receiver? This would be a great saving to the estate. The difference is one of degree and not of principle. When a court, through its receiver, becomes a common carrier, and enters the lists to compete with other common carriers for the carrying trade of the country, it ought not to claim or exercise any special privileges denied to its competitors, and oppressive on the citizen. The court appointing a receiver of a railroad, and those interested in the property, should be content with the same measure of justice that is meted out to all

persons and corporations conducting the like business. The court appointing a receiver cannot, of course, permit any other jurisdiction to interfere with its possession of the property, or control its administration of the fund; but, in the case of long lines of railroad, the question of the legal liability of its receiver to the demands of the citizen, growing out of the operation of the road, should be remitted to the tribunals that would have jurisdiction if the controversy had arisen between the citizen and the railroad company; giving to the citizen the option of seeking his redress in such tribunals, or in the court appointing the receiver.

The case of *Barton* v. *Barbour,* 104 U. S. 126, simply decides that a receiver operating a railroad cannot be sued without the leave of the court appointing him. It does not decide that leave to sue him may not be given by a general order of the court appointing him.

3. The third clause is inserted for the protection of those who have dealings with the receiver, or who are injured in their person or property by the operation of the road under the receiver. In contemplation of law, the property is in the custody of the court, and the road is run and operated by the court. "A receiver is the agent of the court. He is an officer of the court, and his possession is that of the court. He is not the agent of either party, and neither party is responsible for his malfeasance or misfeasance." *Texas & St. L. Ry. Co.* v. *Rust,* 17 FED. REP. 282. No court, therefore, should engage in the operation of a railroad without reserving to itself the means of discharging the obligations incurred in the business. In its effort to coerce a corporation to pay its debts, a court should not contract obligations of its own, and neglect to make provision for their payment. It would be a scandal to do so. Courts should pay their debts, if nobody else does.

4. The fourth clause of the order is admonitory. Neither a railroad company nor its mortgage bondholders can rightfully ask a court to operate a railroad merely because it is desirable or profitable to them, in a business point of view, to have the road operated by such an agency. When a bill is filed by mortgagees to obtain possession or a decree of foreclosure, and a receiver has to be appointed, he should not be continued any longer than is necessary for the plaintiff, by the exercise of diligence, to obtain and execute a final decree, and any delay or want of good faith in this respect should result in his immediate discharge.