GUARDIAN TRUST CO. v. WHITE CLIFFS PORTLAND CEMENT & CHALK CO. et al.

(Circuit Court, W. D. Arkansas, Texarkana Division. May 17, 1901.)

1. CORPORATIONS—MORTGAGES—RIGHTS AND POWERS OF TRUSTEE.

Where a mortgage given by a corporation to secure an issue of bonds reserved to the corporation the right to use and manage the property mortgaged, or to sell or lease its works to others to operate, "so long as no default shall be made in the payment of either principal or interest of the said bonds, or any of them," the trustee in the mortgage may maintain a suit for the cancellation of a lease executed by the officers of the corporation at a time when it was in default in the payment of interest, which was made in opposition to the wishes of a majority of the stockholders, and is alleged to be detrimental to the interests of the bondholders; and such right exists under the general principles of the

law of trusts, independently of the provisions of the mortgage enumerating the rights of the trustee.

**2. SAME—CONSTRUCTION OF MORTGAGE—RIGHT OF FORECLOSURE.**

Provisions in a mortgage given by a corporation to secure bonds, giving the trustee the right to take possession of the mortgaged property or to foreclose the mortgage, on demand of a stated number of bondholders, in case the mortgagor should make default in any of its conditions, which default should continue for three months after demand, are not exclusive of all other remedies, and do not limit the general right of the trustee to go into a court of equity for the protection of his trust or the enforcement of the contract; and on the breach of a covenant of the mortgage by the mortgagor, by failing to pay interest when due, the trustee may maintain a suit to foreclose for such interest at once, without regard to such provisions.

**3. SAME.**

In a suit to foreclose a mortgage given by a corporation to secure bonds, where the legal right to foreclose exists, the court cannot take into consideration the motives which induced the trustee or the bondholders to exercise such right.

In Equity. Suit to foreclose mortgage and for other relief.

Trimble & Braiey, for complainant.

Jones & Hudgins and Ernest Dale Owen, for defendants.

ROGERS, District Judge. Bill in equity brought by the Guardian Trust Company as trustee for the White Cliffs Portland Cement & Chalk Company (hereafter called the "chalk company") to foreclose a mortgage executed by the chalk company to the complainant to secure certain bonds and coupons thereto attached, which coupons evidence the interest on said bonds, and which coupons mature semiannually on the first days of May and November of each year, and also to cancel a lease made by the chalk company to the Arkansas Portland Cement Company (hereafter called the "cement company"). At the commencement of the suit a receiver was appointed, and took into possession all the property of the chalk company, including that leased to the cement company, and a temporary restraining order was granted. The financial condition of the affairs of the company, and the relationships of the majority and minority stockholders among themselves, as well as towards the bondholders, have made it imperatively necessary to continue the receivership, much against the wishes of the court.

The bill has been assailed on two grounds: First, that the execution of the lease by the chalk company to the cement company was neither collusive nor fraudulent, its execution was within the power of the board of directors of the chalk company, and therefore there was no ground for interference either by injunction or by the appointment of a receiver; and, second, there being no default in the interest on the bonds secured by the mortgage, the court was without jurisdiction to maintain the bill. Neither of these contentions can be upheld. In the opinion of the court, the lease itself was fraudulent in law, if not in fact. The lease was executed on the 16th day of December, 1899. On that date the chalk company was in default of the payment of the interest on its interest coupons, in part for the interest maturing May 1, and for the whole of the interest for November 1, 1899. The mortgage of the chalk company to the Guardian

Trust Company (hereafter called the "trust company") was executed on the 30th of April, 1898—

"But in trust, nevertheless, for the equal, pro rata use, benefit, and security of the holders, from time to time, of the aforesaid bonds, amounting altogether to the sum of two hundred and fifty thousand dollars, without any preference or priority of one bond over another by reason of priority in time of issue or registration thereof, or otherwise, and for the uses, purposes, and conditions herein expressed. Subject, however, to the free and uncontrolled use, enjoyment, possession, and management of the said real estate and property hereinabove granted, or intended so to be, including the rents, income, issues, and profits thereof, with the right to dig, excavate, take, and use the chalk, clay, and chalk and clay lands, of said described real estate, or other material upon or in the said premises, or any part thereof, and to sell and dispose of the same, and also the right to convert the said chalk and clay, or other materials, or any part thereof, in the manufacture of the product, and to sell and dispose of the same in the usual course of business, and, subject to the lien of this indenture, to sell or otherwise dispose of or lease the said works, or any part thereof, to others, to operate, control, and manage, by the White Cliffs Portland Cement & Chalk Co., its successors and assigns, so long as no default shall be made in the payment of either principal or interest of the said bonds, or any of them, and so long as the White Cliffs Portland Cement & Chalk Company shall well and truly observe, keep, and perform, all and singular, the covenants and conditions in said bonds and in this indenture expressed, to be observed, kept, and performed by or on behalf of the White Cliffs Portland Cement & Chalk Company."

The second covenant in said mortgage contains this provision:

"That the White Cliffs Portland Cement & Chalk Company will punctually pay the principal and interest of the bonds intended to be hereby secured, as the same shall become due and payable, according to the terms in the said bonds and the coupons thereto attached contained, and on the days therein respectively mentioned for the payment of the same, without deducting from either the said principal or interest of any sum for any tax or taxes which, by any present or future laws of the United States of America, or the state of Arkansas, may be payable for or in respect to the said principal or interest, for national, state, county, or municipal purposes," etc.

The fourth covenant in said mortgage contains the following provision:

"In case the said White Cliffs Portland Cement & Chalk Company, its successors and assigns, shall at any time hereafter, after demand made for the payment of the same, omit, neglect, or refuse, for any period exceeding three months, to pay interest on the bonds intended hereby to be secured, or any of them, after said interest shall have fallen due, according to the terms of the said bonds, * * * or shall, after demand made in writing, either by the trustee or any of the holders of said bonds, omit, neglect, or refuse to do, keep, and perform any of the covenants either in said bonds or in this indenture contained, then, in either such case, upon the written request of the holder or holders of one-fourth of the bonds then outstanding, the said trustee shall enter upon and take possession of the property, estate, and premises hereby granted and mortgaged, or intended so to be."

And the provision then continues, and authorizes the trust company to operate the same, under certain directions and conditions provided in the mortgage, and which are not important to the determination of this case.

"Or the said trustee may and shall, after or without entering upon and taking possession as aforesaid, * * * upon the written request of the holders of fifty per cent. in amount of the bonds then outstanding, proceed forthwith, by suit or suits, in any court of competent jurisdiction, for the re-

covery of the principal and interest of said bonds, or either of them; the said suit or suits to be brought by the trustee for the benefit of the holders of all of the said bonds. Or the trustee may proceed forthwith to the foreclosure of this mortgage, and cause the said mortgaged premises, and every part thereof, with their appurtenances, and all benefits and equity of redemption of the party of the first part, to be sold and disposed of under the decree of some court of competent jurisdiction, or take such other legal proceedings, either at law or in equity, as counsel may advise to be appropriate in the premises. * * * It being further expressly covenanted and agreed that all proceedings to enforce the rights of the bondholders, or any of them, or for the sale of the mortgaged premises, shall be at the instance only of the trustee, and for the common benefit of all the bondholders; it being herein provided, however, that in case the said trustee shall omit, neglect, or refuse to take the proceedings hereinafter provided, in accordance with the terms thereof, for a period of three months after demand made as aforesaid, that then and in such case it may be lawful for any bondholder to use the name of the trustee, and to institute, in the name of the trustee, on behalf of all the bondholders, the proceedings hereinabove provided for; it being herein provided, however, that in case such trustee shall omit, neglect, or refuse to take the proceedings hereinabove provided, in accordance with the terms hereof, for a period of three months after demand made as aforesaid, that then and in such case it may be lawful for any bondholder to use the name of the trustee, and to institute in the name of the trustee, on behalf of all the bondholders, the proceedings hereinabove provided for."

By the fifth clause of the mortgage it is provided that:

"In case the said White Cliffs Portland Cement & Chalk Company, its successors or assigns, shall omit, neglect, or refuse to pay the interest on the bonds as hereinabove stipulated, or to perform each and all of the covenants in said bonds and in this indenture covenanted to be kept and performed, and such default shall continue for a period of three months after demand made in writing for the payment of such interest or for the performance of such covenants, then and in such case the principal of the bonds hereby secured shall, at the option of the trustee, forthwith become due and payable, and it shall be lawful for the said trustee to proceed to collect said principal sum hereby secured in the manner hereinbefore provided for."

By the terms of the provisions of the mortgage first above quoted, it will be seen that when the lease in controversy was executed, namely, on December 16, 1899, the chalk company had no longer any authority to execute a lease. The chalk company did have the right, under the terms of the mortgage, to the free and uncontrolled use, enjoyment, and management of the property mortgaged, to sell its manufactured product, and to sell or otherwise dispose of or lease the said works, or any part thereof, to others, to operate, control, or manage, "so long as no default shall be made in the payment of either principal or interest of the said bonds, or any of them," and so long as said chalk company "shall well and truly observe, keep, and perform, all and singular, the covenants and conditions in said bonds and in this indenture expressed." But, as stated above, when the lease was executed there had been a default in part as to the May, 1899, interest, and as to all of the November 1, 1899, interest, so that the power to sell or lease by the company had ceased at the time the lease itself was executed. But, independent of this consideration, in the opinion of the court it is perfectly obvious, upon the face of the lease and the pleadings and evidence, that the object and purpose of making the lease was to keep the control and management of the property of the chalk company out of the hands of a ma-

jority of its stockholders. At the time the lease was made, as shown by the proofs and the pleadings, a controversy had arisen between the then existing active and local managers of the chalk company, to wit, William J. and John Kelly, and the majority stockholders and bondholders, as to the management of the corporation; and it was apparent that at the February election following, as it afterwards turned out, the board of directors would be changed, and the management of the company pass from the control of the said William J. and John Kelly. That the lease was made to thwart this action there cannot be any doubt, and that it was unilateral, in the opinion of the court, is equally apparent. But, if the company was without power to make it, it suffices that the trustee for the bondholders, under the terms of the mortgage, had the right to take the necessary steps to cancel it; and this of itself gave the court jurisdiction of the subject-matter. It was contended, in this regard, that the trustee was limited to the provisions of the deeds of trust with reference to any action he might take in the premises, but the contention cannot be maintained. In paragraph 749, Perry, Trusts, the author says:

"The corporation itself issues the bonds, and promises to pay the principal and interest at a time named. So long as the corporation pays the interest or the principal of the bonds as agreed, the trustees have little or nothing to do. The general principles of the law of trusts apply to them. Sturges v. Knapp, 31 Vt. 1. They hold the security in trust for the bondholders, as cestuis que trustent; and they must act in good faith, and for the best interest of all. They must take care that the property is not wasted or depreciated or rendered worthless as security."

And this rule is believed to be universally recognized. Shoots, Ry. Bonds & Mortg. par. 284, and cases there cited. Phinizy v. Railroad Co. (C. C.) 56 Fed. 277. In the last-named case Judge Simonton lays down the broad principle that "a trustee can always come into a court of equity for aid or instruction in conserving his trust." The trust company therefore had the right and it was its duty, when, in its opinion, the security covered by its mortgage was jeopardized, or the interest of the bondholders, for whom it was trustee, was endangered, to come into a court of equity, independent of the provisions of the mortgage, under the general principle of the law of trusts, for the purpose of conserving the property covered by the mortgage. It may be suggested in this connection that, when the lease held by the cement company was assailed in this court, it, to all intents and purposes, conceded its invalidity, by voluntarily submitting to a cancellation of the lease. But the right to maintain this suit does not depend, in the opinion of the court, upon the validity or invalidity of the lease, nor upon the want of power in the chalk company to make the same at the time it was executed. The jurisdiction is equally maintainable upon the ground that there had been a default in the payment of its interest at the time the bill was filed. By the second provision of the mortgage quoted supra, it is made to appear that the chalk company agreed "to punctually pay the principal and interest of the bonds intended to be hereby secured, as the same shall become due and payable, according to the terms in the said bonds and the coupons thereto attached contained, and on

the day therein respectively mentioned for the payment of the same." The failure to do this was a breach of the conditions of the mortgage.

It is contended, however, that suit could not be brought until three months had expired, and until demand had been made by a majority of the bondholders upon the trustee to institute suit, as provided in the fourth covenant of the mortgage, supra. This contention cannot be sustained. A similar contention was raised in Railroad Co. v. Fosdick, 106 U. S. 67, 27 L. Ed. 54, and the court in that case said:

"It is undeniable that at the date of the filing of the bill, which was February 27, 1875, the defendant, the Chicago, Danville & Vincennes Railroad Company, was in default for nonpayment of the coupons on $698,500 of the issue of $2,500,000 of the Illinois Division bonds, which matured October 1, 1873. The holders of that amount of these bonds did not fund their coupons, and none of them were paid. This failure on the part of the mortgagor constituted a breach of one of the conditions of the mortgage, and, continuing for six months, entitled the trustee, under the fifth article, to take possession of the mortgaged premises, on being so required by the holders of not less than one-half the outstanding bonds, and collect the net income, until the default should have been satisfied, or to sell the mortgaged premises under the power conferred by the sixth article of the conditions. In the latter event the mortgaged premises would be sold as an entirety, free from the incumbrance of the mortgage, and the proceeds of the sale applied first to the payment of the amount due and in arrears, and then to the mortgage debt not then due, and any surplus to the mortgagor. But, inasmuch as by the terms of the first article the conveyance is declared to be for the purpose of securing the payment of the interest as well as the principal of the bonds, and by the fourth article the mortgagor's right of possession terminates upon a default in the payment of interest as well as principal on any of the bonds, we are of opinion that, independently of the provisions of the other articles, the trustees, or, on their failure to do so, any bondholder, on nonpayment of any installment of interest on any bond, might file a bill for the enforcement of the security, by the foreclosure of the mortgage and sale of the mortgaged property. This right belongs to each bondholder separately, and its exercise is not dependent upon the co-operation or consent of any others or of the trustees. It is properly and strictly enforceable by and in the name of the latter, but, if necessary, may be prosecuted without and even against them. It follows from the nature of the security, and arises upon its face, unless restrained by its terms."

Under this decision, binding upon this court, and which, so far as I have been able to ascertain, has never been modified or overruled, the trustee, upon the default of the interest, had the right immediately, without reference to the expiration of three months, or the demand of any bondholder, to invoke aid of a court of equity for the purpose of foreclosing the overdue interest. Nor does this conclusion militate in the slightest degree against the provisions contained in the fourth covenant of the mortgage quoted supra, where the trustee, upon the demand in one case of 40 per cent. of the bondholders, and in the other upon demand of 50 per cent. of the bondholders, may take possession of the property and appropriate its rents and profits to the satisfaction of the mortgage, or may proceed to sell the same according to its terms. These are express remedies conferred by the terms of the mortgage, and similar provisions were upheld in the case of Railroad Co. v. Fosdick, supra. The same doctrine was upheld in Central Trust Co. v. Texas & St. L. Ry. Co. (C. C.) 23 Fed. 846; Farmers' Loan & Trust Co. v. Chicago & A. R.

Co. (C. C.) 27 Fed. 147–152. In the last-cited case Judge Gresham said:

"It does not follow, however, that because this power is given to the holder of a majority of the bonds that the trustee, at the request of a minority, or even of a single bondholder, may not commence proceedings to foreclose for the nonpayment of interest, or if, on proper demand, the trustee refuses to bring suit, that the minority, or even a single bondholder, may not sue. Failure to pay a single installment of interest is a breach of the trust deed."

In Mercantile Trust Co. v. Chicago, P. & St. L. R. Co. (C. C.) 61 Fed. 372, Circuit Judge Woods held:

"A railroad mortgage provided that until default the mortgagor should be permitted to remain in possession. It also provided that in case of default in the payment of interest, and such default should continue for six months, it should be the duty of the trustee to take appropriate proceedings at law or in equity to enforce the rights of the holders of bonds upon a requisition of holders of at least one-third in the amount of the bonds. Held, that whatever right a bondholder has he has the right to have the trustee enforce for his benefit, and that therefore the trustee could file a bill to foreclose, upon default in the payment of interest, although such default had not continued for six months."

In Farmers' Loan & Trust Co. v. Winona & S. W. R. Co. (C. C.) 59 Fed. 959, Caldwell, circuit judge, in construing a mortgage somewhat similar to this, held:

"The contention of the railway company is that the first clause of article 1 operates as a limitation on the right of the holders of the overdue coupons, or the trustee acting for them, to enforce payment of such coupons by a bill in equity to foreclose the mortgage, and that such a bill will not lie until the interest coupons are six months overdue, and the trustee has demanded their payment in writing. This contention is untenable. The provision of the mortgage quoted is a limitation on the power of the trustee to oust the railway company from the possession of the mortgaged property under the powers granted to the trustee by the mortgage deed. The terms upon which the trustee can enter and take possession of the property are prescribed by this article, but the clause in question does not purport to suspend or postpone payment of the interest coupons for six months after their maturity, or to deny to the holders thereof, or to their trustee, the right to pursue the usual and appropriate remedy in the courts for their collection at any time after their maturity. One or any number of bondholders may prosecute a bill to foreclose the mortgage upon default as to payment of a single coupon, or the trustee may intervene on behalf of all for the same purpose. And to this effect are the controlling authorities in this court. Guaranty Trust & Safe-Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 137, 11 Sup. Ct. 512, 35 L. Ed. 116; Alexander v. Railroad Co., 3 Dill. 487, Fed. Cas. No. 166; Credit Co. of London v. Arkansas Cent. R. Co. (C. C.) 15 Fed. 46; Dow v. Railroad Co. (C. C.) 20 Fed. 260. And when such a bill is filed the equity powers and jurisdiction of the court are precisely what they are in any other suit for the foreclosure of a mortgage after the maturity of the mortgage debt, or some part thereof. In such a suit the court may appoint a receiver for the same reasons that would influence it to make such an appointment in any other case of foreclosure."

In Guaranty Trust & Safe-Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 137, 11 Sup. Ct. 512, 35 L. Ed. 116, the supreme court of the United States, in discussing a similar question to this, said that a provision in a mortgage that the mode of sale provided by it shall be exclusive of all others is an attempt to provide against a remedy in the ordinary course of judicial proceedings, and oust the jurisdiction of the courts, and is therefore invalid. So that if, by

the terms of this mortgage (which is not the fact), no other remedy had been left than that set forth in the mortgage, to the trustee and the bondholders, the provision would have been invalid. Parties will not be permitted to deprive courts of chancery of their general jurisdiction to grant relief in proper cases by stipulations between themselves. But an exhaustive and instructive decision is that of Toler v. Railroad Co. (C. C.) 67 Fed. 170.

In the pleadings in the case at bar the motives of the trustee, and the bondholders secured thereby, as well as of the majority stockholders, are assailed by the company whose mortgage is sought to be foreclosed. It is insisted that the purpose to foreclose this mortgage is to close out the minority stockholders, and get rid of what may be, for convenience, called the "Kelly interests." A similar question was raised in the case last above cited, but Circuit Judge Lurton, in deciding that case, after citing Morris v. Tuthill, 72 N. Y. 575, and Davis v. Flagg, 35 N. J. Eq. 493, said:

"Whether complainants are conducting this suit from good or bad motives, for their own benefit or for the benefit of another, is immaterial. 'It is no defense to a legal demand instituted in the mode and according to the practice of this court that the complainant is actuated by personal or improper motives.' McMullen v. Ritchie (C. C.) 64 Fed. 253; Forrest v. Railway Co., 4 De Gex, F. & J. 131; Dering v. Earl of Winchelsea, 1 Cox, Ch. 319. The motive of a suitor cannot be inquired into. Ex parte Wilbran, 5 Madd. 2; Thornton v. Thornton, 63 N. C. 212. Were it otherwise, nearly every suit would degenerate into a wrangle over motives and feelings. Macey v. Childress, 2 Tenn. Ch. 442. The general character of these averments seems to come within the ruling of Judge Hammond in Lafayette Co. v. Neely (C. C.) 21 Fed. 744, where he decided that 'epithetic' fraud is not sufficient to ground an action upon. Like defenses were set up in Farmers' Loan & Trust Co. v. Green Bay & M. R. Co. (C. C.) 6 Fed. 110, 111, and in Leavenworth Co. v. Chicago, R. I. & P. R. Co. (C. C.) 25 Fed. 229. In the first case cited the court used the following language, which is applicable to much of the complaint made by Taylor: 'There are allegations to the effect that the object of Blair and Dodge and their associates was to obtain ultimate control of the mortgaged property, but the proceedings to foreclose the mortgage were necessarily public and open to all bidders. Confirmation of the sale by the court must, of necessity, also be open to the resistance of any party in interest, if the sale should not be fairly conducted, or if there should be such inadequacy of price as might involve a sacrifice of the property, or injury to the parties interested.' "

In the same opinion the author, at page 179, says:

"If there is any proposition well settled in the courts of the United States, it is that limitations contained in a mortgage, restricting the right of foreclosure, must be strictly construed. The provisions of the second article, which have been substantially recited, apply only to the exercise of the summary power of sale vested in the trustee, and do not purport to be exclusive of all other remedy. Guaranty Trust & Safe-Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 137, 11 Sup. Ct. 512, 35 L. Ed. 116; Railroad Co. v. Fosdick, 106 U. S. 47, 1 Sup. Ct. 10, 27 L. Ed. 47; Morgan's L. & T. R. & S. S. Co. v. Texas Cent. R. Co., 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625; Alexander v. Railroad Co., 3 Dill. 487, Fed. Cas. No. 166; Credit Co. of London v. Arkansas Cent. R. Co. (C. C.) 15 Fed. 46; Farmers' Loan & Trust Co. v. Winona & S. W. R. Co. (C. C.) 59 Fed. 957; Mercantile Trust Co. v. Missouri, K. & T. R. Co. (C. C.) 36 Fed. 221, 1 L. R. A. 397. If the provisions of the mortgage concerning foreclosure were subject to the construction that they are exclusive of all right to resort to a court of equity, then they would be invalid, as intended to oust the jurisdiction of the courts, which, by the uniform current of authority, cannot be done. Guaranty Trust & Safe-Deposit

Co. v. Green Cove & M. R. Co., 139 U. S. 143, 11 Sup. Ct. 512, 35 L. Ed. 116. Under the rule of strict construction, the provision requiring the trustee to 'take no further steps to sell said securities' applies only to a summary sale under the power vested in it by the mortgage. It has no application to a proceeding begun by it in a court of equity to secure a judicial foreclosure. Gurnee v. Patrick Co., 137 U. S. 141, 11 Sup. Ct. 34, 34 L. Ed. 601; Guaranty Trust & Safe-Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 142. 11 Sup. Ct. 512, 35 L. Ed. 116. This mortgage was made to secure principal and interest, equally. It recites as its purpose that it is 'for the equal, pro rata benefit of all the holders of the bonds secured thereby, without any preference or priority of one bond over another by reason of priority in time of issue or negotiation thereof, or for other cause, or of principal over interest, or of interest over principal.' A default in the payment of interest is a breach of the obligation."

Morgan's L. & T. R. & S. S. Co. v. Texas Cent. R. Co., 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625.

By supplemental bills to the original bill, under the provisions of and in confirmity to the mortgage, the principal debt secured by the mortgage, and sought to be foreclosed, has been declared by the trustee to be due and payable; and, by supplemental bill, subsequent installments of interest, evidenced by coupons to the bonds, have, since the institution of this suit, long since matured, and the foreclosure is sought by supplemental proceedings for them also.

Other questions were sought to be raised by the defense, and were discussed at the hearing, but the court is of opinion that they are entirely without merit, and a decree of foreclosure is ordered. The case will be referred to a master, with instructions to state the account, and report forthwith to the court the amount due on the mortgage, including the unpaid accumulated interest.

At a former hearing a motion, accompanied by a petition, was presented to the court, asking leave to file the same, whereby it was sought to tax the cost of the receivership in this case to the complainant company. The motion to file the same is denied, since, if filed, it must of necessity fall by the decree which has been ordered.