### FISHER et al. v. ADAMS et al.

(Circuit Court of Appeals, Third Circuit.   October 12, 1894.)

#### No. 10.

INSOLVENT BANKS—LIABILITIES — ORGANIZATION OF TRUST AND DEPOSIT COMPANY TO AID BANK—FRAUD ON PUBLIC.

The officers of an embarrassed bank organized a trust and deposit company to "aid the bank in its struggle for existence." The two institutions had the same officers, and did business in the same building. The bank owned all the trust company's stock, and the deposits and securities of the latter were treated as belonging to the bank, and were abstracted from time to time to meet its necessities. *Held*, that the organization and use made of the trust company was a plain fraud on the public, and, on the failure of both institutions, the trust company was to be treated as a creditor of the bank to the amount of the funds so used.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was an action by Josiah R. Adams, receiver of the Penn Safe Deposit & Trust Company, and others, against Benjamin F. Fisher, as receiver of the Spring Garden National Bank, and against the bank itself, to establish a liability on the part of the bank for certain funds of the trust and deposit company, which were used for its benefit. The circuit court entered a decree for complainants, and respondents appealed.

John R. Read, Silas W. Pettit, and H. B. Gill, for appellants.

M. Hampton Todd, Samuel B. Huey, and Thomas R. Elcock, for appellees.

Before ACHESON, Circuit Judge, and BUTLER and GREEN, District Judges.

BUTLER, District Judge.   The Spring Garden National Bank and the Penn Safe Deposit & Trust Company were substantially one concern.   The latter was organized as an adjunct to the former. Its stock was owned by the bank, held in the names of the bank's directors, its business was conducted in the same building as the bank's, and the officers of each were the same.   F. W. Kennedy the president of both, after describing the manner of organizing the trust company and the purpose it was intended to serve, says it

"Had one purpose, and that was to aid the bank in its struggle for existence.   There was no other motive.   I made use of the trust company as

an instrument to that end. If it had not been for the stringency and the carrying out of this plan of mine to receive deposits in the trust company, these deposits would have been made by the different individuals in the bank, and would now be among the liabilities of the bank, and the loans transferred would now be the assets of the bank.   *   *   *

"I looked upon it as one and the same institution, and also I looked upon these transfers as a temporary matter, which would be undone as soon as business resumed its normal condition. It was a temporary matter to bridge over the financial stringency and panic, but the Keystone Bank failure and Bardsley trouble coming increased the panic, and there was nothing for me to do but to let the bank go down.   *   *   *

"Q. Then, if I understand you correctly, in dealing with the assets of the bank and the assets of the trust company in borrowing money and receiving deposits, you dealt with them as if they belonged to one and the same institution?

"A. Yes; I clearly did.

"Q. And that one institution was the national bank?

"A. Yes.

"Q. The other being merely an adjunct or instrument?

"A. Yes."

From time to time, as the bank's necessities required, the funds and securities of the trust company were transferred to the bank, so that when the receiver took possession he found little in its vaults. He therefore brought this suit to have the bank declared responsible for the property so transferred. After testimony had been heard the defendant admitted liability for the principal part of the claim; whereupon the following decree was entered:

"And now, November 21, 1893, this cause having been heard on bill answer and proofs, but upon agreement of counsel as to all matters hereby decreed, except as to so much of this decree as relates to 'note of Francis W. Kennedy, dated November 18, 1889, for the sum of $15,000,' and as to this latter matter the cause having been now fully considered, it is

"Ordered and decreed that Josiah R. Adams, as receiver of the Penn Safe Deposit and Trust Company is a creditor of the Spring Garden National Bank of the City of Philadelphia in the sum of one hundred and seventy-eight thousand dollars, represented by the following obligations, namely:

"Note of Nelson F. Evans, dated December 10, 1889, for the sum of $25,000.

"Note of Van Gunden & Young, dated August 13, 1886, for the sum of $37,500.

"Note of Van Gunden & Young, dated January 2, 1891, for the sum of $25,000.

"Note of Francis W. Kennedy, dated April 9, 1891, for the sum of $37,500.

"Note of Alfred C. Rex, dated October 23, 1890, for the sum of $37,500.

"Note of Francis W. Kennedy, dated November 18, 1889, for the sum of $15,000; amounting in all to the sum of one hundred and seventy-eight thousand dollars; and it is further

"Ordered that the plaintiffs shall deliver to the defendant B. F. Fisher, as receiver of the Spring Garden National Bank, the above set forth obligations together with the following collateral securities, namely; 465 shares of the capital stock of the Delaware and New England Company, which is collateral to the note of Nelson F. Evans, for $25,500, and 130 shares of the capital stock of the same company which is collateral security to the note of Francis W. Kennedy, for $15,000; and it is further

"Ordered that the following collateral security, namely; 312 shares of the capital stock of the Hero Fruit Jar Company, as collateral security to the note of Van Gunden & Young, for $37,500; 312 shares of the capital stock of the same company as collateral security to the note of Francis W. Kennedy, for $37,500, 312 shares of the capital stock of the same company, which is collateral security to the note of Alfred C. Rex, for $37,500, and 280 shares of the capital stock of the Delaware and New England Company which is collateral security to the note of Van Gunden & Young, for $25,000, which

is now in the hands of B. F. Fisher, as receiver of the Spring Garden National Bank, be retained and applied by him, as such receiver.

"And it is further ordered that the said J. R. Adams, as receiver as aforesaid is entitled to participate in a pro rata distribution of the assets of the said Spring Garden National Bank of the City of Philadelphia, and the receiver of said national bank, will pay and distribute accordingly the amount ascertained to be due the Penn Safe Deposit and Trust Company by this decree, in addition to the sum of thirty-four thousand nine hundred and three and seventy-four one-hundredths dollars, which appeared as a deposit to the credit of the Penn Safe Deposit and Trust Company on the books of the Spring Garden National Bank, which has been already proved and dividends paid thereon.

"And it is further ordered and decreed that there is due and owing from the Spring Garden National Bank of the City of Philadelphia the sum of two hundred and twelve thousand nine hundred and three dollars and seventy-four cents, being the total of the aforesaid sums of one hundred and seventy-eight thousand dollars for notes and thirty-four thousand nine hundred and three dollars and seventy-four cents for amount of debt proved, together with interest from April 9, 1891, amounting in all to the sum of two hundred and forty-four thousand nine hundred and three dollars and seventy-four cents, unto Josiah R. Adams, as receiver of the Penn Safe Deposit and Trust Company, plaintiff."

From this decree an appeal was taken on behalf of the bank, and numerous errors were assigned. The only one pressed however, is that which relates to so much of the decree as renders the bank responsible for the abstraction of $15,000 worth of stock deposited as security for Kennedy's worthless note, in that sum.

The facts respecting this transaction do not differ materially from those respecting the other transactions covered by the decree; and the bank was justly held responsible for it. The responsibility arises not only out of the fact that the stock was abstracted by its president for its benefit, and the proceeds applied to its use, but especially out of the circumstance that it was done in pursuance of the bank's scheme in organizing the trust company and its practice in dealing with its funds, and that it must therefore be treated as having been done with its knowledge and approbation. It is unimportant that Kennedy owed the bank money and that the amount raised from the stock was credited to him. The bank was in trouble and the stock was taken for and applied to its relief, in pursuance of its design in organizing the trust company and its practice in dealing with it. The organization of the company and the use made of it was a plain fraud on the public and depositors, for the consequence of which the decree justly makes the bank responsible. It is therefore affirmed.