BUTLER et al. v. COCKRILL.

OLD NAT. BANK OF GRAND RAPIDS et al. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. April 13, 1896.)

Nos. 682, 683.

1. DEED BY TRUSTEES—PRESUMPTION OF AUTHORITY.

The fact that trustees holding lands in trust for a national bank formally and regularly execute a deed thereof to a third party itself raises a presumption that the deed was made pursuant to a regular resolution of

the bank's board of directors, and the deed must be *held* sufficient to convey the legal title where there is nothing to rebut the presumption.

2. VENDOR'S LIEN—PRETENDED SALE.

There can be no vendor's lien in favor of a bank which causes lands held in trust for it to be conveyed to a corporation, for the purpose of giving such corporation the appearance of ownership, and the power and opportunity to deal with strangers as the owner, when in reality it takes the lands in trust for the bank. There can be no vendor's lien when there is no actual sale.

3. CORPORATIONS—ULTRA VIRES—ESTOPPEL.

A bank which causes property owned by it to be conveyed by a deed regular in form to a worthless corporation, organized by its own directors, and then loans such corporation money, takes its notes, and discounts them with strangers, by representing them as prime paper and on the strength of such corporation's apparent ownership of such property, is thereafter estopped, as against the holders of the notes, to assert that the conveyance was ultra vires.

4. SAME—INSOLVENCY—CREDITORS AND STOCKHOLDERS.

A bank for which certain mill property was held in trust caused the same to be conveyed to a corporation, organized among its own officers and directors, with a view to loaning to such corporation money wherewith to repair and operate the mills and make them salable. The bank directors who subscribed for stock in the mill corporation had a secret agreement with the bank that, after a sale of the property was effected, the proceeds should be first applied to repay the amount of their subscriptions. The money was loaned accordingly, the bank taking the mill company's notes, and discounting them with innocent third parties. No sale was effected, and the bank and mill company failed, and all their property went into the hands of the bank's receiver. Thereafter the mill company gave to such subscribers its own notes, secured by mortgage, for the amounts paid on the stock, and the notes were then transferred to alleged innocent purchasers. *Held*, that these notes were without consideration, that this was a futile attempt to divert the property of an insolvent corporation from its creditors to its stockholders, and that the proceeds of the receiver's sale of the mill property must be equally distributed among the holders of the notes given by it to the bank for the borrowed money, the receiver taking, for the bank's creditors, the proportion applicable to such of the notes as were retained by the bank.

Appeals from the Circuit Court of the United States for the Eastern District of Arkansas.

Morris M. Cohn, for appellants E. J. Butler, trustee, and Oscar Davis et al.

W. C. Ratcliffe, John Fletcher, and E. W. Kimball, for appellants Old Nat. Bank of Grand Rapids, Mich., and Southern Nat. Bank of New York.

S. R. Cockrill and Ashley Cockrill, for appellee Sterling R. Cockrill, receiver of First Nat. Bank of Little Rock, Ark.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. These controversies arise over the distribution of the proceeds of some cotton mills in the city of Little Rock and the lands on which they stood, which were sold under an agreement by all the parties to the original suit that the money derived from the sale should be paid into the court below and should stand in the place of the real estate. In a suit brought in that court, before the sale of the property, by Sterling R. Cockrill, as receiver of the First National Bank of Little Rock, Ark., the appellee,

against the appellants in these cases, and against all parties interested in this property, a decree was rendered that the receiver was entitled to recover all the proceeds of this sale, for the benefit of all the creditors of the First National Bank. The Old National Bank of Grand Rapids, Mich., and the Southern National Bank of New York, joined in one appeal from this decree, and E. J. Butler, as trustee in a certain trust deed of the property, and those who held the notes described in that deed, joined in the other appeal. The question is, to which of these parties do the proceeds of the sale of this real estate belong?

On February 3, 1893, the First National Bank of Little Rock, Ark., was insolvent, and the comptroller of the currency appointed a receiver of its property, who took possession of and has since been administering it. The legal title to the real estate, the proceeds of which are here in question, was then in the Little Rock Cotton Mills, a corporation which was organized on May 19, 1891. That corporation had taken possession of this property in the summer of 1891, had borrowed $23,000 of the First National Bank, which it had used to buy new machinery for, to make repairs upon, and to operate the mills, and had given its promissory notes to that bank for this money. These notes were unpaid. The First National Bank held two of them, which amount to $8,000. It had negotiated two of them, which amount to $11,000, for value and before maturity, to the Southern National Bank of New York; and it had negotiated one of them, which was for $4,000, for value and before maturity, to the Old National Bank of Grand Rapids, Michigan. The Little Rock Cotton Mills was insolvent. It had no property but the real estate, the proceeds of which are here in question, and it owed no debts but the $23,000, evidenced by these notes. The receiver of the First National Bank, soon after his appointment, took possession of these mills and this property of the cotton mills, and held it as such receiver until it was sold by the order of the court.

The property of an insolvent corporation constitutes a trust fund, pledged to the payment of all its debts, equally and ratably. Graham v. Railroad Co., 102 U. S. 148, 161; Railway Co. v. Ham, 114 U. S. 587, 594, 5 Sup. Ct. 1081; Richardson v. Green, 133 U. S. 30, 44, 10 Sup. Ct. 280. In view of this principle, there can be no doubt, under the state of facts which we have recited, that the proceeds of the property of the cotton mills ought to be distributed pro rata among the three banks, which hold these notes and are its only creditors. The receiver of the First National Bank, however, seeks to escape from the effect of this principle, and to recover the entire proceeds of this property, by virtue of these additional facts:

Prior to June 29, 1889, this property belonged to another insolvent corporation, which conveyed it to P. K. Roots and Oscar Davis, in trust, for the First National Bank and the German National Bank, in satisfaction of debts owed to them. This property was silent and unproductive. The president, the cashier, and the directors of the First National Bank decided to organize the Little Rock Cotton Mills, to have this property conveyed to that corporation, to have that corporation operate the mills, and then to sell them for the highest

price it could obtain. The purpose of this plan was to make the mill property more salable by putting it into operation, and thus to enable the bank to realize a larger amount for it; and the reason for putting the title to it in the Little Rock Cotton Mills was evidently to have a corporation that could make bills receivable that could be discounted on the credit of this property, and to have a corporation to carry on a business which, under its charter, the bank might not be able lawfully to conduct. The bank had eleven directors. Six of them joined with one Greer and incorporated the Little Rock Cotton Mills on May 19, 1891. They made four of their number members of its board of directors, which consisted of seven. They chose one of their number president of that corporation, and these officers remained such, and conducted the affairs of the cotton mills, until this suit was commenced. They filed a certificate in the office of the secretary of the state of Arkansas, that each of them held 20 shares of $25 each of the capital stock of that corporation, that $5,000 of its capital stock had been actually paid in by the subscribers, and that one Robert Greer had subscribed for 200 shares. When this had been done, H. G. Allis was president of the First National Bank, and H. G. Allis, N. Kupferle, Gus Blass, M. G. Hall, William Farrell, Mark M. Cohn, Logan H. Roots, W. H. Haliburton, George H. Sanders, and C. M. Taylor were its directors, and George H. Sanders was its counsel. N. Kupferle was president of the Little Rock Cotton Mills, and H. G. Allis, N. Kupferle, M. G. Hall, Mark M. Cohn, Robert Greer, E. J. Butler, and George R. Brown were its directors. Before these directors of the First National Bank subscribed for their shares of the capital stock of the cotton mills, they, as president and directors of the bank, agreed with themselves as individuals that those of the directors and stockholders of that bank who subscribed and paid for stock in the cotton mills should be first repaid the amounts they paid for the stock, out of the proceeds of the sale of the mills when made; but they did not make this agreement with Robert Greer, who subscribed for 200 shares. Pursuant to this contract, H. G. Allis, N. Kupferle, Gus Blass, M. G. Hall, William Farrell, Mark M. Cohn, George R. Brown, and E. J. Butler each subscribed for 20 shares of the stock of the cotton mills, and each paid or promised to pay $500 therefor. About May 25, 1891, the First National Bank bought the interest of the German National Bank in the property in question, and the latter bank authorized its president and Oscar Davis, its cashier, to convey it. Thereupon, on the request of the president of the First National Bank, and with the knowledge and consent of all its directors and officers, Oscar Davis and P. K. Roots conveyed the real estate in question to the Little Rock Cotton Mills, by deed dated May 25, 1891, which recited that they held the property in trust for the two banks, and that the conveyance was "executed by their directors, and at their request, and for their benefit." The several notes of the Little Rock Cotton Mills, which evidence its indebtedness for the $23,000, were made more than a year after this deed had been recorded, and in the months of June and October, 1892. No record of the passage of any resolution by the board of directors of the

bank, authorizing their trustees, Davis and Roots, to make the deed to the cotton mills, was produced at the trial, but several of the directors testified that such a resolution was passed. The Little Rock Cotton Mills paid nothing for the conveyance made by Davis and Roots to it; but, soon after that conveyance was made, it proceeded to borrow money of the First National Bank, upon its notes, and to repair, improve, and operate the mills with this money. For this purpose it borrowed and used $23,000, and when its property was sold it brought but $15,000. When the First National Bank discounted the notes of the cotton mills, now held by the Old National Bank and the Southern National Bank, it represented that these notes were prime paper; and those banks had no notice, other than the record of the deeds, that the cotton mills did not own the property conveyed to it by Davis and Roots. On March 3, 1893, after the bank and the cotton mills had both become insolvent, when all their property was in possession of the receiver of the bank, and about two years after the stockholders of the cotton mills had taken their stock, that corporation made and delivered to each of the subscribers to its stock, who were either directors or stockholders of the bank, its promissory note for $500, and made a trust deed of all its property to secure the payment of these notes. A few days after this deed was made and recorded, the cotton mills made another trust deed, to secure the payment of its notes for $23,000, held by the three banks. The subscribers to the stock of the cotton mills, who received notes for $500, immediately transferred them to other parties, who claimed to be bona fide purchasers thereof for value. The holders of all these notes, the Little Rock Cotton Mills, and the trustee named in these trust deeds were parties to the suit brought by the receiver of the First National Bank, and a part of the relief sought in that suit was that these mortgages should be set aside and declared to be void.

Upon this state of facts, counsel for the receiver of the bank insists that he is entitled to all the proceeds of the property of the Little Rock Cotton Mills, to be distributed pro rata among the general creditors of the bank; counsel for the Old National Bank and the Southern National Bank contend that these banks have a prior claim in equity to these proceeds; and counsel for the holders of the $500 notes maintain that they have a right to these proceeds superior to that of the First National Bank. It is conceded on all hands that Davis and Roots had no beneficial interest in the mill property, but held the title to it in trust for the First National Bank after the latter purchased the interest of the German National Bank therein. Resting upon this concession, counsel for the receiver base their contention on three propositions: They say—First, that there never was any resolution or other action of the board of directors which authorized Davis and Roots to convey the property to the Little Rock Cotton Mills, and hence the bank always owned it; second, that if the board ever passed such a resolution, the conveyance to the cotton mills was void, because it was made at the instance of the directors of the bank to a corporation of their own, to enable the bank to conduct a business beyond its powers; and, third, if

the conveyance was valid, the cotton mills paid nothing for it, and the bank had a vendor's lien upon the property for more than the amount realized from its sale.

The first and third propositions cannot be maintained upon the evidence. The testimony is clear and convincing that the board of directors of the First National Bank did pass a resolution which authorized and requested Davis and Roots to convey this property to the cotton mills, although no record of it was produced, and perhaps none was ever made. It was, however, the passage of the resolution, not the record of it, that gave the authority to make the conveyance. Moreover, Davis and Roots recited in their deed that it was executed by the directors of this bank, at their request, and for their benefit. The First National Bank had undoubtedly lawful right and ample power to direct this conveyance to be made by its trustees, and, at its request, these trustees had the right and the power to make it. On the face of the deed their power appears to have been lawfully exercised. The fact that this deed was formally and regularly executed by these trustees at once raises the presumption that it was made pursuant to a regular resolution of the board of directors of the bank, and by its direction, and there is nothing in this record to overcome that presumption. A conveyance by trustees, formally executed, and not necessarily beyond the scope of their powers, will, in the absence of proof to the contrary, be presumed to have been made by lawful authority. Acts done which presuppose the existence of other acts to make them legally operative are presumptive proof of the latter. City of Lincoln v. Sun Vapor Street-Light Co., 19 U. S. App. 431, 438, 8 C. C. A. 253, 257, and 59 Fed. 756, 760; Barber Asphalt Paving Co. v. City of Denver, 72 Fed. 336; Lincoln v. Iron Co., 103 U. S. 412, 416; Bank of U. S. v. Dandridge, 12 Wheat. 64, 70; Omaha Bridge Cases, 10 U. S. App. 98, 189, 2 C. C. A. 174, 240, and 51 Fed. 309, 326, 327; Union Water Co. v. Murphy's Flat Fluming Co., 22 Cal. 620, 629. The deed to the Little Rock Cotton Mills, therefore, must be held, upon this record, to be sufficient to convey the legal title to the property it describes to that corporation.

As to the vendor's lien, there is no evidence whatever of its existence. No one came to testify that the bank sold this property to the cotton mills, or that the cotton mills bought it of the bank, or agreed to pay for it. The evidence was uncontradicted that the bank and its directors caused this property to be conveyed to that corporation for the purpose of giving the latter the appearance of ownership of it, and the power and opportunity to deal with strangers as its owner, when, in reality, it held it all the time in trust for the bank. There can be no vendor's lien where there is neither vendor nor vendee. But it is argued that the deed to the cotton mills was void, and the title to the property it described remained in Davis and Roots, in trust for the bank, because it was made in fulfillment of a void contract between the bank and its directors to convey this property of the bank to a corporation which these directors controlled, and to cause that corporation to carry on a business with this property which the bank could not lawfully conduct. It would

not be a difficult task to show that a national bank, which has taken a mill property for a debt, has the power to lease it to a third person to operate, and has the power to convey it to him, under an agreement that he shall operate and sell it, and account to the bank for its proceeds; that when it has made such a lease or contract, the bank may discount his notes to enable him to conduct his business. Nor are we prepared to concede that all contracts made by directors and officers with their bank, for its benefit, and without profit or the hope of it for themselves, are either against public policy or void. Smith v. Lansing, 22 N. Y. 520–522, 527, 528, 533, 534; Oil Co. v. Marbury, 91 U. S. 587, 589, 591; Hotel Co. v. Wade, 97 U. S. 13, 21, 23.

But we dismiss these questions. We rest the decision of this case on broader ground. A corporation is bound to a careful adherence to truth in its dealings, as much as an individual. It cannot take advantage of its own wrong to benefit itself, and to defeat the just calculations of innocent third parties who have acted in reliance upon its representations and conduct. It is governed by the well-settled rule that "one who, by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence, induces another to believe certain facts to exist, and the latter rightfully acts on such a belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts, is thereby conclusively estopped to interpose such denial." Paxon v. Brown, 27 U. S. App. 49, 60, 10 C. C. A. 135, 143, and 61 Fed. 874, 881, 882; National Life Ins. Co. v. Board of Education of City of Huron, 27 U. S. App. 244, 10 C. C. A. 637, and 62 Fed. 778; Omaha Bridge Cases, 10 U. S. App. 98, 188, 190, 2 C. C. A. 174, 239, 240, and 51 Fed. 309, 326, 327; Zabriskie v. Railroad Co., 23 How. 381, 397; Cairncross v. Lorimer, 3 Macq. 828; Dickerson v. Colgrove, 100 U. S. 578, 582; Kirk v. Hamilton, 102 U. S. 68, 75; Evans v. Snyder, 64 Mo. 516; Pence v. Arbuckle, 22 Minn. 417; Crook v. Corporation of Seaford, L. R. 10 Eq. 678; Paxton v. Faxon, 28 Mich. 159. The First National Bank procured the conveyance of this property to the Little Rock Cotton Mills for the express purpose of giving that corporation the semblance of title to it, and of enabling it thereby to operate the mills, and finally to sell the property. We say it gave that corporation the semblance of title, for, as we have seen, the deed was valid on its face, and vested the legal title in the cotton mills. The bank then loaned money to that corporation to enable it to repair, improve, and operate these mills, took the promissory notes of that corporation for this money, and discounted three of them, aggregating $15,000, with the Southern National Bank and the Old National Bank, under the representation that they were prime paper. It goes without saying that this course of action was as much a representation by this bank that the title to this property was in the cotton mills, and that its notes were collectible from this real estate, as if it had expressly so stated. The cotton mills had no other property, and, if its notes charged any property, they charged this. If these notes were prime paper, it was because the cotton mills held the title to this property, and the notes were collectible

from its proceeds. Now, could the First National Bank, under the principles and authorities we have cited, cause some of its property to be fairly conveyed to a worthless corporation, and thus clothe that entity with the appearance of vigor and prosperity, then take its notes, discount them with innocent third parties on the strength of this appearance, and when the notes fell due, retake the property to itself, on the ground that it had exceeded its powers, and violated public policy, when its directors caused this property to be conveyed to the corporation, and thus obtain for itself both the proceeds of the notes it discounted and the property on the strength of which it obtained the discount, and leave the purchasers of the notes to pursue the grinning skeleton of the corporation for their money? The question needs no answer. Concede that the contract between the First National Bank and its directors, and the conveyance of the property to the Little Rock Cotton Mills in pursuance thereof, were void, as between them, because they effected a conveyance of the property of the bank to a corporation controlled by its directors. Concede that, at the suit of any of the parties to it, a court of equity would have avoided this entire transaction. The bank gave no notice that it was void. It caused and permitted the fair appearance of title to remain in the Little Rock Cotton Mills unchallenged, until it had discounted the notes of that corporation on the strength of that appearance; and it does not lie in its mouth now to say to the purchasers of these notes that the appearance was false, because of the secret and unlawful agreement between it and its directors. In Zabriskie v. Railroad Co., 23 How. 381, 400, 401, a case in which the guaranty of a corporation upon certain bonds was originally void, because the corporation had failed to accept the act of the legislature, which authorized the guaranty, the supreme court held that the corporation and its stockholders were estopped to question the validity of the guaranty by their acts in permitting, and their acquiescence in, the circulation of the bonds. Mr. Justice Campbell said, after discussing the invalidity of the guaranty, as between the stockholders and the corporation:

"But we are to regard the conduct of the corporation from an external position. The community at large must form their judgment of it from the acts and resolutions adopted by the authorities of the corporation, and the meeting of the stockholders, and their acquiescence in them. These negotiable securities have been placed on sale in the community, accompanied by these resolutions and votes, inviting public confidence. They have circulated without an effort on the part of the corporation or corporators to restrain them, or to disabuse those who were influenced by these apparently official acts. Men have invested their money on the assurance they have afforded. A corporation, quite as much as an individual, is held to a careful adherence to truth in their dealings with mankind, and cannot, by their representations or silence, involve others in onerous engagements, and then defeat the calculations and claims their own conduct had superinduced."

Concede that the First National Bank had no power under its charter to repair, improve, and operate these mills, either in its own name or in the name of another. It was nevertheless within its power to cause Davis and Roots to convey this property to a bona fide purchaser, or to another trustee; and the presumption from the record of the deed was that it was lawfully made. The bank cannot

now rebut that presumption, for the purpose of defeating the right or remedy which an innocent stranger has acquired in reliance upon it. The doctrine of ultra vires cannot be successfully invoked to defeat the ends of justice or to work a legal wrong. Railway Co. v. McCarthy, 96 U. S. 258, 267; Fisher v. Adams, 11 C. C. A. 396, 63 Fed. 674; Campbell v. Mining Co., 51 Fed. 1. Concede that the Little Rock Cotton Mills held the title to this property in trust for the bank. The money expended, and the liabilities incurred by the trustee, at the request of or with the consent of the beneficiary, to repair, improve, and operate the property held in trust, constitute, in equity, a preferential claim upon the trust property, which must be paid out of its proceeds before the beneficiary or any of its creditors can share them. Mechem, Ag. § 684; 2 Jones, Liens, §§ 1175, 1177; 2 Lewin, Trusts, 639. The entire indebtedness of this trustee was incurred with the consent of the bank, to repair and operate the trust property, and the holders of that indebtedness are entitled to payment out of the proceeds of the property before the bank or its creditors are entitled to a dollar. In short, there is no just view of this case that can be taken which would entitle the receiver of the First National Bank to the entire proceeds of the property of the cotton mills, or to any preference in their distribution over the two other banks which hold notes of that corporation. The proceeds should be distributed pro rata between the holders of the notes of that corporation for the $23,000, under the well-settled principles of equity jurisprudence to which we have adverted. In this view the question of the validity of the mortgage made by the Little Rock Cotton Mills to secure the payment of these notes becomes immaterial, and it will not be considered.

The second question in this case is: Are the holders of the promissory notes which were made by the Little Rock Cotton Mills on March 3, 1893, to some of the directors and stockholders of the First National Bank, to repay to them the amounts which they had subscribed or paid for the capital stock of the cotton mills in 1891, and to secure which that corporation made its trust deed to the appellant E. J. Butler, entitled to a preference in payment out of the proceeds of the property of that corporation over the receiver of the First National Bank? Conceding that the agreement which these directors made with the bank, before they subscribed for their stock in the cotton mills, to the effect that they should be first repaid the amounts which they subscribed from the proceeds of the sale of the mills which should be made, was not void or against public policy, this was a contract between these directors and the bank only. It was not an agreement between them and the cotton mills. After this agreement had been made, these directors and stockholders made a contract with the Little Rock Cotton Mills that they would take from it the stock, and pay to it the par value of the stock for which they subscribed; and in their articles of incorporation, which they published to the world, they certified that they had done so. The Little Rock Cotton Mills, therefore, never owed them anything. They were not creditors, but stockholders and officers, of that corporation. They imposed upon themselves the duty of managing its af-

fairs with care and prudence, and they subjected all their claims against it and rights in it to the payment of its just debts. Standing in this relation to the cotton mills, and holding their secret agreement with the bank to be repaid from the proceeds of this property, they procured its conveyance to the Little Rock Cotton Mills as a trustee for the bank. What was their relation to this trustee and to this property when this had been done? They had this secret agreement with the cestui que trust that they should be first paid out of the proceeds of the trust estate; but they had made a solemn public contract with the trustee and its creditors that they would see that it wisely and prudently administered its trust, and that it paid all the debts it incurred in so doing, before the cestui que trust should receive any of the proceeds of its property. This contract the law of corporations imposed upon them. Under it, they caused this trustee to incur an indebtedness of $23,000 in administering its trust, and three months after their management had made it insolvent they caused it to make notes to themselves and a trust deed upon all its property to secure the repayment to them of their subscriptions to its stock, in preference to its creditors, and then immediately transferred these notes to innocent purchasers, for value, who appealed from the decree below, and insist upon a preference over the First National Bank in the distribution of the proceeds of this property.

These appellants concede that the Old National Bank and the Southern National Bank, as creditors of this trustee, are entitled to a preference over them in the distribution of this fund; but they insist that the First National Bank is not. If the latter bank could realize a fund from the proceeds of this property, as the beneficiary of the trust, after the payment of the debts of the trustee, the question whether these appellants would not be entitled to a preference in the distribution of that fund might be worthy of serious consideration; but the share of this fund which the First National Bank will receive, under the view we take of this case, it will obtain, not as the beneficiary of the trust, but as a creditor of the trustee. It will obtain it because, subsequent to its promise to its directors and shareholders on which these appellants relied, it loaned to that trustee, with their consent, funds to enable it to administer its trust. If the trustee had borrowed this money from, and promised to pay it to, a stranger, it is conceded that these appellants could claim no share in it. If the trustee had fulfilled its promise to pay the notes it gave to the First National Bank for this money, the appellants certainly could not have claimed any part of the moneys so repaid. This is the true test of their rights. The subscribers to the stock of the cotton mills had no contract with this bank that they should receive any of the money which it should subsequently loan to the trustee, and which that trustee should repay to it; nor have the appellants, who hold the notes given to these subscribers, any lien or claim upon that fund. The facts that the trustee has not repaid this loan, and that it became necessary to sell the trust estate to raise the money to repay it, does not change the character of the fund. It is none the less money loaned to and repaid by the trustee, and it is not money realized by the beneficiary, as such, from the sale of this trust estate. It was not

pledged by the contract of the bank with the directors, and it would violate the fundamental principles of the law of trusts and of the law of corporations to give these appellants a preference in its distribution. It would violate the principle that the property of an insolvent corporation is a trust estate pledged—First, to the payment of its creditors; and, second, to distribution among its stockholders. It would violate the rule that the just debts and expenses incurred by a trustee in the administration of the trust estate must be paid be-. fore any portion of the fund realized from it can be distributed to the beneficiary or applied to the payment of his debts.

The result is that on March 3, 1893, the Little Rock Cotton Mills was insolvent, and it owed the subscribers to its stock nothing. The promissory notes it gave them were clearly without consideration. They were not issued to raise money to administer the trust estate, and did not charge it; and the deed of that date which the corporation made to secure them was a futile attempt to divert the property of the corporation from the payment of its creditors to the payment of its stockholders, and to divert the trust estate from the payment of the debts incurred by the trustee in its management to the payment of the obligations of the cestui que trust. It was voidable at the suit of the creditors of the cotton mills, and created no lien or charge upon its property enforceable against them. An insolvent corporation cannot lawfully divert its property from the payment of its creditors, to a distribution among its stockholders. Hayden v. Thompson, 17 C. C. A. 592, 71 Fed. 60, 63, and cases cited. A trustee cannot lawfully divert the property of the trust estate from the payment of just debts he has incurred in its management to the payment of prior obligations of the cestui que trust. 2 Jones, Liens, §§ 1175, 1177.

Moreover, there is no equity in the claim of the directors of this bank. As such directors, they were trustees for its general creditors and stockholders. They took the money of these general creditors and stockholders of the bank in 1892, and loaned it to this trustee to carry on its manufacturing business, and for this money they took the promise of the trustee to repay it. They did this at a time when they had certified that they were stockholders and not creditors of the trustee, and when they had spread upon the records the appearance of title to this property in the latter. They ought not now to be permitted to deprive the general creditors of this bank of a right to a repayment of their money out of the property which these directors made this trustee appear to hold, on the ground that their own representations were false, that the appearance they produced was deceitful, and that in fact they were not stockholders but creditors of the trustee, who held the first lien upon all its property. Paxon v. Brown, 27 U. S. App. 49, 10 C. C. A. 135, and 61 Fed. 874, and the cases cited under it.

The decree of the court below must be reversed, with costs, and the case must be remanded to the court below, with directions to enter a decree to the effect that, out of the fund raised by the sale of the property of the Little Rock Cotton Mills, there shall first be paid to the receiver of the First National Bank of Little Rock, for taxes

on and expenses paid in the care of the property, the sum of $1,-129.05 and interest at 6 per cent., in accordance with the agreement of the parties to this suit, and that the remainder of said fund be distributed between the receiver, the Southern National Bank of New York, and the Old National Bank of Grand Rapids, Michigan, in proportion to the amounts owing on February 1, 1893, on the five promissory notes of the Little Rock Cotton Mills, aggregating $23,-000 and interest, held by them and described in the agreed statement of facts herein; and it is so ordered.