FARMERS' LOAN & TRUST CO. v. STUTTGART & A. R. R. CO.

(Circuit Court, E. D. Arkansas, W. D.    February 13, 1901.)

MORTGAGE FORECLOSURE—APPLICATION OF FUNDS—DECREE.

In a suit by the trustee to foreclose a mortgage on a railroad, persons holding claims for supplies furnished the railroad company within a year prior to the appointment of the receiver intervened. The court ordered the receiver to issue certificates for the claims, which should be a lien superior to the mortgage, and also ordered him to issue certificates for money to make repairs to enable him to operate the road, which likewise should be a lien superior to the mortgage. The foreclosure decree directed application of the funds—First, to payment of expenses attendant on the sale; "second, to the payment of the costs of this suit, and the compensation of the plaintiff herein"; and, "third, to the payment of all interventions or other claims * * * allowed by this court in this cause as

superior to the lien of * * * the mortgage." *Held*, that the certificates for debts contracted by the receiver are included as "costs of suit" in the class to be paid second in order.

See 92 Fed. 246.

The trustee for the mortgage bondholders of the defendant railroad company instituted this action to foreclose the mortgage, default in the payment of the interest having been made. A receiver was appointed by the court; the decree appointing the receiver providing that all debts due from the company, which, under the laws of the state of Arkansas, are entitled to priority over the mortgage lien, be given priority out of the earnings of the road, or its corpus if necessary. After the appointment of the receiver, and after due notice to all parties in interest, the court made the following order: "Now, on this day the application of the receiver heretofore filed in this case to issue certificates for certain purposes therein mentioned came on for hearing, and it appearing that there are taxes due upon said railroad and unpaid; and it further appearing that there is due for the purchase of engine number two a sum amounting to about one thousand dollars, more or less, and that the service of said engine is necessary to the proper operation of said railroad; and it further appearing that while said railroad was in the hands of a receiver, under an appointment of this court, before the institution of this suit, and that during said period, debts were contracted, for which the parties were to have receiver's certificates; and it further appearing that there are due to other parties, for work and labor performed upon said railroad, amounts not yet fully ascertained, and to others, for machinery, materials, fixtures, and other things furnished towards the equipment, and to facilitate the operation, of said railroad, an amount of money not yet ascertained; and it further appearing that there is no money in the hands of said receiver with which to pay said demands, which are now due, and that the same, under the laws of the state of Arkansas, are superior and paramount to that created by the deed of trust mentioned and described in complainant's bill,—it is ordered, adjudged, and decreed that the receiver herein be, and he is hereby, authorized and empowered to issue receiver's certificates, bearing six per cent. per annum, for the purpose of taking up, paying off, and discharging the aforesaid demands, falling within the provisions of this order, and that the same be a lien superior and paramount to that created by the deed of trust aforesaid. And it further appearing to the court that the engines and cars upon said railroad are greatly out of repair and wholly unfitted to successfully operate said railroad, and that said railroad company has no shops or material for the repairing of the same, and that the receiver is without money to pay for said repairs; and it further appearing that there is no turntable at the southern termini of said railroad, and no means provided for turning said engine, and that the same is being run backward, and that said manner of running is dangerous to life and property, and that the receiver is without money to provide a means of turning said engine,—it is ordered, adjudged, and decreed that the receiver is hereby authorized and empowered to issue receiver's certificates, bearing interest as aforesaid, for the purpose of putting in a suitable 'Y,' whereon said engines may be turned, and for the expenses so incurred he is hereby authorized and empowered to issue receiver's certificates, which shall constitute a lien superior and paramount to that created by the deed of trust mentioned in said bill of complaint; and it is further ordered, adjudged, and decreed that said engines and cars be repaired, and that for the cost of repairing the same the receiver is hereby authorized and empowered to issue receiver's certificates bearing interest as aforesaid for the purpose of paying for said repairs, and that the same shall constitute a lien paramount and superior to that created by the deed of trust aforesaid." In pursuance of this order the receiver issued certificates to creditors of the railroad company for the amount due them for materials, supplies, and other things furnished by them within 12 months prior to the appointement of the receiver, and which, under the laws of the state of Arkansas, were entitled to priority over the mortgage. These certificates amounted to about $25,000. He also issued certificates for the money borrowed by the receiver to pay taxes due and make such repairs as were absolutely necessary to enable him to operate the road with safety. The fore-

closure decree, directing the sale of the property, contained the following provisions: "It is ordered and decreed that the funds to arise from said sale shall be applied as follows: First, to the payment of all proper expenses attendant upon said sale, including the expense, outlays, and compensation of the master to make said sale, as such expense, outlays, and compensation may be hereafter fixed and allowed; second, to the payment of the costs of this suit, and the compensation of the plaintiff herein for its services, charges, and expenses in the execution of its trust under said mortgage so made to it as aforesaid, including its own compensation and commission, and its disbursements for solicitors and counsel fees in the execution of said trust, as such charges, expenses, and compensation may be hereafter fixed and allowed by this court; third, to the payment of all interventions or other claims heretofore or hereafter to be allowed by this court in this cause as superior to the lien of the bonds mentioned in the mortgage foreclosed hereby, or, if the fund realized be not sufficient to pay the same, then to the payment of the same pro rata." The road having been sold, the fund in court, after paying the court costs proper, is barely sufficient to pay the holders of the certificates issued for debts contracted by the receiver; and the holders of the other certificates claim that their certificates are of the same class as the others, and they should be permitted to share equally with them in the distribution of the fund. For convenience, the certificates issued for debts contracted by the receiver will be referred to as "Class A," while those issued for debts contracted by the railroad company within 12 months prior to the appointment of a receiver, and which were declared to be entitled to priority in payment over the mortgage debt, will be referred to as "Class B."

J. M. & J. G. Taylor, P. C. Dooley, and M. M. Cohn, for certificate holders of class B.

John McClure and S. H. West, for certificate holders of class A.

TRIEBER, District Judge (after stating the facts). This case is but another illustration of the danger incurred by courts when undertaking to manage a railroad after the owners had failed to operate it without great loss; and while the court, as at present constituted, is in no way responsible for this state of affairs (these orders having been made by the former judge of this court, and, it seems, by the consent of all parties in interest), the duty of determining the rights of the parties devolves upon it. The power of the courts to authorize receivers to borrow money and to issue certificates therefor for the purpose of preserving and managing the property, and make them a lien thereon for its repayment, is now well settled. Mr. Justice Bradley, in Wallace v. Loomis, 97 U. S. 146, 24 L. Ed. 895, says:

"The power of a court of equity to appoint managing receivers of such property as a railroad, when taken under its charge as a trust fund for the payment of incumbrances, and to authorize such receivers to raise money necessary for the preservation and management of the property, and make the same chargeable as a lien thereon for its repayment, cannot at this day be seriously disputed. It is a part of their jurisdiction, always exercised by the court, by which it is its duty to protect and preserve the trust funds in its hands."

The power, under certain circumstances, for the court to direct the receiver to pay pre-existing debts of certain classes out of the earnings of the receivership, or even the corpus of the property, also exists; but, as was said by Mr. Justice Blatchford, in delivering the opinion of the court in Miltenberger v. Railway Co., 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117:

"The discretion to do so [meaning the latter] should be exercised with very great care. The payment of such debts stands, prima facie, on a different

basis from the payment of claims arising under the receivership, while it may be brought within the principle of the latter by special circumstances."

The order authorizing the issuance of both classes of receiver certificates is silent as to which of them should have priority, or whether they should both be considered of the same class; the order only providing that each of them should have priority over the mortgage debt. In determining whether both classes of certificates should share alike, where the property is not sufficient in amount to pay both classes in full, the court cannot overlook the fact that the money for which the certificates in class A were issued was loaned to the court, acting through its receiver, for the purpose of enabling it to operate the railway with safety, while, on the other hand, the debts represented by the certificates of class B were incurred by the railroad company itself, and the credit extended to the railroad company, influenced, no doubt, by the provisions of the Arkansas statutes (section 6251, Sand. & H. Dig.), which prior to the decision of the supreme court of the state in Railway Co. v. Spencer, 65 Ark. 183, 47 S. W. 196, were presumed to give such debts priority over the mortgage. The certificates in class B, while issued by the receiver under order of the court, cannot be strictly called receiver's certificates. They were merely certificates issued by the receiver, showing that these amounts were due from the railroad company, and had been adjudged by the court as being a prior lien to that of the mortgage. As the credit for which the certificates in class A were issued was extended solely to the court, acting through its receiver, the holders of these certificates have a right to look to the court for repayment, if there is any fund in the court, realized either from the operation or a sale of the road, out of which they can be paid. In the language of Judge Caldwell in Dow v. Railroad Co. (C. C.) 20 Fed. 260:

"No court should engage in the operation of a railroad without reserving to itself the means of discharging the obligations incurred in the business. In its efforts to coerce a corporation to pay its debts, the court should not contract obligations of its own, and neglect to make provision for their payment. It would be a scandal to do so. Courts should pay their debts, if nobody else does." 20 Fed. 269.

In Kneeland v. Luce, 141 U. S. 491, 12 Sup. Ct. 32, 35 L. Ed. 830, the court say:

"Where such [receiver's certificates] are issued, and the court, as in this case, impresses upon them a preferential lien, good faith requires that its promise should be redeemed, unless, perhaps, it be shown that the issue of the certificates was actually fraudulent." 141 U. S. 508, 12 Sup. Ct. 38, 35 L. Ed. 836.

Acting upon this principle, Judge Sanborn, in delivering the opinion of the circuit court of appeals of this circuit, said:

"The moneys expended and the liability incurred by receivers or trustees in the authorized operation, preservation, and management of the property intrusted to them constitute preferential claims upon the trust estate, which must be paid out of its proceeds before they can be distributed to the beneficiaries of the trust." Mercantile Trust Co. v. Farmers' Loan & Trust Co., 26 C. C. A. 383, 81 Fed. 254.

Had the court, at the time the order authorizing the receiver to issue these certificates was made, known that there would not be sufficient money realized from the sale of the property to pay both

classes of certificates, or had the court been advised that the operation of the road by the receiver would require not only all the earnings, but also the corpus, it is hardly reasonable to presume that the court would have permitted the receiver to operate the road.  No sane business man or banker would have loaned the receiver money at 6 per cent. per annum, unless assured that such indebtedness would have priority over any other debts of the corporation contracted by it; and, as the court was the borrower, it was not unreasonable to presume that the court would not permit creditors of the corporation to deprive them of their money.  If these creditors of the corporation did not want the road, while in the hands of the receiver, to be operated at a loss, which could be only made up by receiver's certificates, which would be taxed as expenses of the receiver, they should have objected to the order authorizing the receiver to borrow this money.  But, having assented thereto, it is now too late to question the propriety of the action of the court.  Could it be successfully contended that if there had been no mortgage, and these creditors of the corporation, who are now the holders of the certificates of class B, had secured the appointment of a receiver to enable them to enforce their liens supposed to be given to them by the statutes of the state of Arkansas, that they would be entitled to stand on an equal footing with creditors of the receiver for moneys loaned to enable him to operate the road?  If not, why should they be entitled to such rights when the receiver is appointed at the request of other lienholders, whose liens are secondary to theirs?  In Bank v. Ewing, 43 C. C. A. 150, 103 Fed. 168, the court, in disposing of a like contention, which arose in relation to the claim of Smith, said:

"Operating expenses incurred by receivers during their management and control of the property are entitled to preference over the claim of this appellant. [His claim was like that of the parties who hold certificates of class B in this case.] While the demand of the appellant against the railway company is a meritorious one, we cannot, consistently with established principles, adjudge it priority over claims of higher dignity, and displace liens to which it is subordinate." 43 C. C. A. 170, 103 Fed. 188.

In the same case, in the claim of the St. Charles Car Company, the court also held that the claim of the car company, having been adjudged by the court to be an indebtedness of the receiver, was entitled to priority over the debts of the corporation, which had been adjudged to be entitled to a preference over the mortgage debt.  43 C. C. A. 175, 103 Fed. 193.

But it is urged that the final decree of foreclosure placed both classes of certificates on an equality, and that the decree, not having been appealed from, is now conclusive.  The decree provides that the fund arising from said sale should be applied—First, to the payment of all proper expenses attendant upon said sale, including the expenses, outlays, and compensation of the master, etc.; second, to the payment of the costs of this suit, and the compensation of the plaintiff herein for its services, charges, and expenses in the execution of its trust under said mortgage so made to it as aforesaid, including its own compensation, commissions, and its disbursements for solicitor's and counsel fees in the execution of said trust, as such

charges, expenses, and compensation may be hereafter fixed and allowed by this court; third, to the payment of all interventions or other claims heretofore or hereafter to be allowed by this court in this case as superior to the lien of the bonds mentioned in the mortgage foreclosed hereby, or, if the fund realized be not sufficient to pay the same, then to the payment of the same pro rata. As the court construes this decree, the certificates of class A properly fall within the provisions of section 2 of the decree. While it is true that the expenses of managing and operating the road by the receiver are not strictly costs of suit, yet they are expenses incurred in the litigation and by order of the court, and may properly be included within the meaning of the words "costs of suit." When property is attached or seized by an officer under process of law, the expenses of preserving the property pending the litigation are charged as costs of the suit. The expenditures made by order of the court by the receiver, and for which certificates in class A were issued, were for the preservation of the property. If the road was to be operated,—and it seems all the parties in interest agreed that it should be operated,—it was essential that the roadbed should be kept in such condition that it could be operated with safety. That this was evidently the intention of the court is further evidenced by the fact that the third clause of the decree provides that "all interventions or other claims heretofore or hereafter to be allowed by this court in this cause, as superior to the lien of the bonds mentioned in the mortgage." The holders of certificates in class A were not interveners, nor the holders of any claims against the railroad corporation which were superior to the mortgage lien. They were creditors of the receiver for money loaned to the receiver, and in reliance upon the good faith of the court; while, on the other hand, the holders of certificates of class B received their certificates solely by reason of interventions for claims against the railroad company created before the appointment of the receiver, but which, by reason of the erroneous construction of the statutes of the state of Arkansas and the orders of the court, were adjudged to be a lien on the railroad property prior to that of the mortgage. The court is of the opinion that the fund in court should be distributed as follows: First, to the payment of the court costs, proper, including the master's, trustee's, and attorney's fees, as has been agreed upon by all parties in interest; next, to the payment of the receiver's certificates issued for money loaned and materials furnished to the receiver under the orders of the court, and who hold certificates in class A. If there is any balance, it is to be distributed pro rata among the holders of the receiver's certificates of class B. The holders of the mortgage bonds can receive nothing in any event.