BANK OF COMMERCE et al. v. CENTRAL COAL & COKE CO. et al.

(Circuit Court of Appeals, Eighth Circuit. April 14, 1902.)

No. 1,567.

1. RAILROADS—FORECLOSURE OF MORTGAGE—PRIORITY AS BETWEEN RECEIVER'S CERTIFICATES.

It is the duty of the court to pay indebtedness which it has authorized its receiver to contract in the administration of railroad property, before any indebtedness of the company, from the proceeds of the property, and receiver's certificates representing such indebtedness are entitled to priority of payment over those issued by order of the court for preferential debts of the company.

2. SAME—CONSTRUCTION OF DECREE.

A provision of a decree foreclosing a railroad mortgage, and directing a sale of the property, that the fund arising therefrom, after payment of costs, etc., shall be applied "(3) to the payment of all interventions or other claims heretofore or hereafter to be allowed * * * as superior to the lien of the bonds, * * * or, if the fund realized be not sufficient to pay the same, then to the payment of the same pro rata," does not apply to receiver's certificates issued by direction of the court in payment of indebtedness it has itself contracted in the operation of the property, but should be construed as referring only to claims against the railroad company; and it does not put it out of the power of the court to thereafter deal with the question of the priority of such certificates under a general provision of the decree passing the cause "for further orders."

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

John M. Taylor (P. C. Dooley, Morris M. Cohn, and J. G. Taylor, on the brief), for appellants.

W. C. Perry (Samuel H. West, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. The Farmers' Loan & Trust Company filed a bill against the Stuttgart & Arkansas River Railway Company to foreclose a mortgage on the company's road. A receiver was appointed to operate the road pending the foreclosure proceedings. The order appointing the receiver authorized him to pay certain debts of the railroad company incurred for labor, materials, and supplies prior to the appointment of the receiver. Subsequently the court authorized the receiver to issue certificates for such indebtedness, which were declared to constitute a lien on the road paramount and superior to the lien of the mortgage in suit. The certificates issued under this order are known as "Class B." The court made an order authorizing and directing the receiver to borrow money to pay the taxes on the road, and to construct a Y, and make needed repairs on the engines and cars on the road; and for the debts incurred in complying with this order he was authorized to issue certificates which were declared to constitute a lien on the road superior and paramount to that of the mortgage in suit. The certificates issued by the receiver for expenses incurred by him under this order of the court are known as "Class A." It will be observed that the indebtedness for which the receiver's certificates in class A were issued was contracted by the receiver in compliance with an order of the court. This indebtedness was incurred by the court while it had the possession and custody of the road, and was operating it, through its receiver. Properly speaking, the certificates issued by the receiver for this indebtedness are the obligations of the court issued for debts incurred by the court itself in the operation of the road and the administration of the trust. The certificates embraced in class B were issued for the debts incurred by the railroad company prior to the appointment of the receiver, but which were declared to be paramount and superior in right of payment to the mortgage debt. The lower court held that the certificates in class A should be paid in preference to the certificates in class B. The opinion of the circuit court is reported in Farmers' Loan & Trust Co. v. Stuttgart & A. R. R. Co. (C. C.) 106 Fed. 565. The appellants contend that all the certificates stand on the same footing, and should be paid pro rata.

When the debts of the railroad company were contracted, the credit was given to the railroad company. The creditors extended the credit to the company with the full knowledge of all the risks incident to extending credit to a railroad company, among which may be mentioned the insolvency of the company, the appointment of a receiver therefor, and the right and authority of the court appointing the receiver to incur debts in the operation of the road which would have the preference right of payment over any and every class of indebtedness of the railroad company. On the other hand, when the debts of the receiver were contracted in pursuance of the order of the court the credit

was given to the court. The railroad company was not liable for such indebtedness. The creditors knew they must look to the court alone for payment, but they also knew that it was the duty of the court contracting this indebtedness to discharge the same if the property or its proceeds in its custody and possession was adequate to that purpose. Debts contracted by the railroad company on its credit, although they belong to the class called "preferential," do not rank on the same high plane with debts contracted by the court on its credit; and, where the property or fund in the custody and control of the court is not adequate to pay both classes, preference will be given to the debts contracted by the court. The obligations of the railroad company to pay its debts is not affected by the receivership and foreclosure. It retains its corporate existence, and its creditors may still pursue it, and in some cases its officers and stockholders. But it is not so with the debts contracted by the court. They are not debts of the railroad company, and the company is not liable for them. The court alone is liable for its debts. That obligation imposes on the court the duty to apply the property or its proceeds in its custody and control to the payment of the debts contracted by it in and about the management of the property. Judicial repudiation of obligations is not to be sanctioned under any conditions. One of the chief duties of courts of justice is to compel delinquent debtors to pay their debts. It could do this with poor grace indeed if it neglected to pay its own debts when it had the means to do so. It is true that the errors and mistakes of courts, though they may ruin a citizen, are placed in the category of injuries produced by the law, and for which the law furnishes no redress. But here the court has committed no error or mistake, and has it in its power to protect its contracts and its credit, and do justice to the citizens who trusted it. While a court cannot be adjudged a bankrupt, and no proceedings can be taken against it to enforce payment of its obligations, these very facts make it all the more important that it should scrupulously observe its obligations to the citizen. A court that would fail to do this would speedily and justly forfeit the respect and confidence of the public. We conclude, therefore, that the lower court was right in ordering the payment of the receiver's certificates issued for the court's debts in preference to those issued for the company's debts, though those debts were declared to be preferential. Dow v. Railroad Co. (C. C.) 20 Fed. 260; Mercantile Trust Co. v. Farmers' Loan & Trust Co., 26 C. C. A. 383, 81 Fed. 254; Miltenberger v. Railroad Co., 106 U. S. 311, 1 Sup. Ct. 140, 27 L. Ed. 117; Butler v. Cockrill, 20 C. C. A. 122, 73 Fed. 945, 953; Bank v. Ewing, 43 C. C. A. 150, 103 Fed. 168.

But it is said, while the court might originally have given this preference, it was foreclosed from doing so by the terms of the final decree of foreclosure, which, it is claimed, put all the receiver's certificates on an equality. We do not so construe the decree. The clauses of the decree on which this contention rests read as follows:

"It is also ordered, adjudged, and decreed that the lien of said mortgage is prior to any other lien in favor of any party to this cause, except so far as this court has heretofore ordered certain intervening claims paid by S. W. Fordyce, the receiver herein, and has, by certain decrees and orders of

this court heretofore entered herein, declared such claims, and judgments entered thereon, to be paramount and superior to the lien of the mortgage described in the bill of complaint herein, as shown by the records of this court in this case, reference thereto will more fully appear; and except, also, to the interventions of S. R. Cockrill, receiver of the First National Bank of Little Rock, Arkansas, the Arkansas Supply Company, A. C. Barstow, executor and trustee, three separate interventions for $5,000, cash advanced; $2,108.96, taxes paid; and on account of Illinois Steel Company, four notes, each for $1,650.96. *The question as to the priority of the lien of each of the claims or interventions above described being passed for further consideration and decree of this court.* It is further ordered and decreed that the fund to arise from said sale shall be applied as follows: (1) To the payment of all proper expenses attendant upon said sale, including the expenses, outlays, and compensation of the master commissioner to make said sale, as such expense, outlays, and compensation may be hereafter fixed and allowed. (2) To the payment of the costs of this suit, and the compensation of the plaintiff herein for its services, charges, and expenses in the execution of its trust under said mortgage so made to it as aforesaid, including its own compensation and commissions, and its disbursements for solicitor's and counsel fees in the execution of said trust, as such charges, expenses, and compensation may be hereafter fixed and allowed by this court. To the payment of all interventions or other claims heretofore or hereafter to be allowed by this court in this case as superior to the lien of the bonds mentioned in mortgage foreclosed hereby; if the fund realized be not sufficient to pay the same, then to the payment of same pro rata."

We think the clause of the decree which we have italicized was intended to reserve the question of priority between the several classes of debts contracted by the railroad company having preference over the mortgage debt. If the clause of the decree we have italicized included the debts contracted by the receiver under the order of the court, then the question of priority between these debts and the other debts mentioned in the decree was expressly reserved for further consideration; and, if such debts were not included in this clause of the decree, then they were unaffected by it, and it remained for the court to order and direct their payment according to the principle we have indicated should apply to such debts.

Touching the "(3)" clause of the decree, we think it refers to the debts of the railroad company which had been or might thereafter be allowed and given a preference over the mortgage debt,—in other words, to the class of debts contracted by the railroad company which are commonly called "preferential." It was obvious to the court and to the parties when this decree was rendered that the property or its proceeds would not be adequate to pay the costs of foreclosure, the debts of the receiver contracted by order of the court, and the debts of the railroad company which had been or might be adjudged to be preferential, and this fact accounts for this clause of the decree. The term "interventions," in this clause of the decree, was not appropriate to describe the receiver's certificates embraced in class A. When the court makes an order authorizing its receiver to incur a debt, and issue a receiver's certificate for the same, and the receiver, in compliance with such order, contracts the debt and issues his certificate therefor, no petition of intervention and no further order are necessary to establish that debt or its preferential character. That was done by the order of the court authorizing and directing the receiver to contract the debt and issue the certificate. A debt thus

115 F.—56

contracted is an audited claim from its inception. It then becomes the duty of the court to make suitable provision for the payment of such debt, which is, in effect, as we have seen, a debt of the court.

But a further answer to the contention of the appellants that the decree of foreclosure put it out of the power of the court to subsequently deal with the question of the order of payment of the receiver's certificates is found in the last clause of the decree, which gives to the parties the right to "apply to the court for further orders and directions at the foot of this decree, and this cause is passed for further orders." We think the retention of the cause "for further orders" authorized the court to make any further appropriate order on the subject of the receiver's certificates.

The circuit court held that the certificates in class A fell within the provisions of section "(2)" of the decree, and should be paid as part of the costs and expenses of the receivership under this clause. We do not find it necessary to discuss or decide that question.

The decree of the circuit court is affirmed.